[No. B002684. Second Dist., Div. Seven. June 22, 1984.]

BUDGET REALTY, INC., Plaintiff and Appellant, v.
MARTIN DOUGLAS HUNTER et al., Defendants and Respondents.

COUNSEL

Philip R. Homsey II for Plaintiff and Appellant.

Murray D. Fischer and Robert M. Zavidow for Defendants and Respondents.

OPINION

THOMPSON, Acting P. J.—Budget Realty, Inc. (Seller) appeals from the summary judgment in favor of Martin D. Hunter and Linda Rubin (together referred to as Buyer). The sole issue on appeal is whether a purchase money trust deed is taken outside the antideficiency protection of Code of Civil Procedure section 580b[1] when the trust deed contains an unexercised agreement to subordinate the security to a construction loan. We find that until the subordination provision is exercised, jeopardy to the seller's security has not been aggravated. Thus, we hold that presence of an unexercised subordination provision does not take a purchase money loan outside section 580b protection.

### Facts

The Buyer purchased commercial property, paying $15,000 cash and taking the property subject to an existing first trust deed of $46,000. The Seller

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

took back a $29,000 promissory note secured by a junior second deed of trust for the balance of the purchase price. The junior trust deed contained a provision in which the Seller agreed to subordinate his lien to up to $400,000 of construction financing. The Buyer never proceeded to obtain construction financing and thus the subordination provision was not exercised.

Subsequently, the Buyer defaulted on the senior lien debt. The senior lienholder executed on the security through a trustee's sale, extinguishing the Seller's junior lien. The Seller filed suit to recover personally against the Buyer on the purchase money note. The Buyer asserted section 580b as a defense. Both parties moved for summary judgment on stipulated facts. The court below granted Buyer's motion on the basis of the section 580b defense. The Seller appeals from the judgment.

### Discussion

■ Section 580b prohibits a deficiency judgment after any sale of real property under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price.[2] Thus in the event of a default in payment under a purchase money debt owed to the vendor and secured by the property purchased, the vendor can only look to the security for the recovery of the debt. (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 198 [259 P.2d 425]; *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615, 623 [180 Cal.Rptr. 342].)

In interpreting that section, we must recognize that section 580b, like other components of the entire statutory system curbing deficiency judgments in cases involving land-secured obligations, "has been liberally construed to effectuate the specific legislative purpose behind it. . . . '[T]he courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal construction that often goes beyond the narrow bounds of the statutory language.' " (*Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370]; see Riesenfeld, *Cal. Legislation Curbing Deficiency Judgments* (1960) 48 Cal.L.Rev. 705, 709.)

In *Brown* v. *Jensen, supra,* 41 Cal.2d 193, our Supreme Court held that section 580b applies to a junior lienholder whose security had been rendered valueless by foreclosure of a senior encumbrance. In *Brown,* the buyers, as

---

[2]Section 580b provides in pertinent part: "No deficiency judgment shall lie in any event after any sale of real property . . . under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, . . ."

part of the purchase price, obtained a loan from a savings and loan institution. The savings and loan secured its loan by a first trust deed on the purchased property. The seller agreed to take back a note secured by a second trust deed for an additional part of the purchase price. The buyers defaulted on the senior note. The savings and loan sold the property under the power of sale contained in the first trust deed, rendering valueless the security under the sellers' second trust deed. When the seller then brought an action on her promissory note to recover the balance of the purchase price, the Supreme Court held section 580b barred any such deficiency judgment. (*Id.*, at pp. 197-198.)

Seller here concedes that *Brown* v. *Jensen, supra,* 41 Cal.2d 193, is the landmark case in California upholding the antideficiency provisions of section 580b. Seller, however, contends that the action herein falls within the exception to section 580b delineated in *Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055].

In *Spangler,* our Supreme Court held "that when in the sale of real property for commercial development, the vendor pursuant to the agreement of sale, subordinates his purchase money lien to the lien securing the purchaser-developer's construction loan and thereafter, upon the default of the purchaser-developer, loses his security interest after the sale or foreclosure under the senior lien, section 580b should not be applied to bar recovery by the junior vendor lienor of the unpaid balance of the purchase price of the property. [Fn. omitted.]" (*Id.*, at p. 614.)

In *Spangler,* seller sold property containing a house for commercial development for $90,000. The buyer paid $26,000 cash down payment, the seller taking back a $64,000 promissory note secured by a purchase money deed of trust for the balance of the purchase price. The seller agreed to subordinate the purchase money debt to constructions loans of up to $2 million in return for the buyer-developer's written personal guarantees and waivers of antideficiency statute protection. The buyer obtained a construction loan from a bank for $408,000 secured by a first trust deed. As a condition of the loan, the bank required seller to execute a specific subordination agreement recognizing the bank's priority in lieu of the automatic subordination clause contained in the original trust deed. When the buyer defaulted, the bank foreclosed, extinguishing the seller's junior lien. (7 Cal.3d at pp. 605-607.)

*Spangler* explicitly reaffirmed the "continued vitality" (7 Cal.3d at p. 609) of *Brown* v. *Jensen, supra,* 41 Cal.2d 193, and repeatedly reiterated its central ruling that section 580b by its language applies to sold-out junior lienors holding a purchase money mortgage or deed of trust. (*Spangler,* 7

Cal.3d at pp. 609-611.) *Spangler,* however, further pointed out that (1) section 580b applies automatically only to the "standard purchase money situation"; but (2) if the transaction is a variation on the standard, the factual circumstances must be examined to determine whether the particular purchase money situation falls within the debtor protection purposes of section 580b. (7 Cal.3d at p. 611.) Thus the *Spangler* court stated, quoting its prior decision in *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97]: " 'Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to 580b only if they come within the purpose of that section.' " (7 Cal.3d at p. 610.)

The *Spangler* court determined that the case before them was a variation on the standard transaction and did not come within the purpose of section 580b: "[A] sale of real property for commercial development in which the vendor agrees to subordinate his senior lien under the purchase money deed of trust to the liens of lenders of the construction money for the commercial development is a variation on the standard purchase money mortgage transaction" because a change of use is contemplated and therefore the present security value of the property is not a reliable indicator of its ultimate value. (7 Cal.3d at p. 611.) Accordingly, the subordination clause situation herein appears sufficiently different from the standard purchase money-mortgage situation to remove it from automatic application of section 580b and to require analysis of the factual setting in light of the purposes of section 580b and the proper assignment of risk. (*Id.,* at pp. 611-612.)

*Spangler* suggests that the two purposes of section 580b are to " 'discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability.' [Citation.]" (7 Cal.3d at p. 612.) *Spangler* further suggests that section 580b should not be applied in a nonstandard transaction such as in a subordination context since application of 580b would encourage instead of discourage overvaluation. (*Id.,* at p. 613.)

As many commentators have recognized, however, section 580b promotes overvaluation in all its application, whether standard or variant. "[T]he impact of CCP § 580b is to encourage overvaluation in every context, not only in the subordination setting. The seller will sell for as high a price as he can, even though he is to be undersecured, CCP § 580b notwithstanding. If he cannot get additional security and chooses not to take a separate unsecured note, the seller certainly has nothing to lose by taking a purchase-

money trust deed that includes the part of the price that is in excess of the property's value or that exceeds the price he could obtain elsewhere. Because of CCP § 580b, he can look only to the property for satisfaction in case of default, regardless of what price he can obtain. A valueless encumbrance for the excess leaves the seller in no worse position than if he had not had it." (Hetland, Secured Real Estate Transactions (Cont.Ed.Bar 1974) pp. 212-213.)

*Spangler* further dismissed the second purpose of section 580b in its application to a subordination context: "The second purpose delineated in *Roseleaf,* namely to prevent aggravation of a depression in land values by not burdening purchasers with loss of the property plus personal liability, has little applicability to a sold-out junior lienor in the subordination clause context. If section 580b is applied to prevent the deficiency judgment, then the subordinating sold-out junior lienor loses both the land and the purchase price. If section 580b is not applied then the purchaser is subjected to the same burden." (7 Cal.3d at p. 614.) However, the rationale that either the purchaser or the sold-out junior loses both the land and the purchase price is an undistinguishing rationale true of all sold-out juniors, subordinated or otherwise.

The more convincing rationale of *Spangler* is the equitable analysis of the effect the variant transaction has on the seller's security. The subordination of a seller's purchase money lien to construction financing exposes the seller to unique risks. Construction financing is extremely short-term financing. Further, the amount financed for construction of improvements generally dwarfs the value of the land. Thus, for a seller to salvage his position from the foreclosing construction lender, the seller must pay a "balloon payment" typically exceeding the entire value of the land he sold. Permanent or interim "take out" financing is not accessible until the project is substantially completed. Further, the costs of the improvements are reflected only fractionally in the project's value until the improvements are substantially completed. A half-completed office building generally does not have one-half the market value of a completed office building. Subordination to construction financing substantially aggravates the jeopardy to the seller's security.

In other commercial contexts, as in the case before us, the seller's opportunity to cure a default under the senior loan is a more real one. Under Civil Code section 2924, the junior lienholder can cure a default in a payment under the senior loan within three months of notice of the default. With the seller's opportunity to cure the default of a single payment prior to acceleration of the entire senior debt, the buyer does not really subject

the property to any additional jeopardy. The additional jeopardy to the security arises only after the actual subordination.

Recent changes in the financing of real property distort this relatively simple determination of when jeopardy to the seller's security is aggravated. With the increasing frequency of short-term financing and balloon payments in nonconstruction financing of real estate, a seller could conceivably be prejudiced by the uncertainty of his successor (the buyer) meeting a balloon payment on a senior loan. Still, even in such a case, the seller's security is merely dependent on financing structured by himself or his predecessor.

By examining the additional jeopardy the purchase money security is exposed to, we focus on the substance of the subordination transaction. If the simple presence of a subordination clause takes a transaction outside 580b protection, a seller could insert an agreement accepting subordination of his purchase money mortgage to a $1 construction loan. To create absurd forms that effect waiver where the Legislature does not allow explicit waiver is undesirable. If the Legislature determines that commercial transactions should be outside 580b application, the Legislature could amend 580b to apply only to residential transactions. Explicit negotiations in commercial contexts might be desirable. However, imposition of personal liability should not turn on form, but rather should be imposed with additional risk to the seller's security. Accordingly, in the circumstances of this case, additional risk to the security is effected on exercise of the subordination clause and not by mere presence of the clause.

The judgment is affirmed.

Johnson, J., and Pickard, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1984.

---

*Assigned by the Chairperson of the Judicial Council.