[No. A041465. First Dist., Div. Four. Feb. 3, 1989.]

WILLIAM BOYLE, Plaintiff and Respondent, v.
EDWIN P. SWEENEY et al., Defendants and Appellants.

COUNSEL

James T. Proctor and James R. Lorenzato for Defendants and Appellants.

Thomas A. Paoli and McQuaid, Bedford, Brayton, Clausen & Grell for Plaintiff and Respondent.

OPINION

CHANNELL, J.—After a court trial, the trial court determined that respondent William Boyle was entitled to recover the principal due on the promissory note of appellants Edwin P. Sweeney and Ronald Brown. Sweeney and Brown appeal, contending that codified antideficiency protection (see Code Civ. Proc., § 580b)[1] precludes this result. We affirm the judgment.

## I. FACTS

In 1981, Mario and Pearl Evola[2] and appellant Edwin P. Sweeney executed a promissory note for $50,000 to Gertrude Boyle. The note was secured by a deed of trust on real property on Broderick Street in San Francisco and Boyle agreed to subordinate her deed of trust to a deed of trust for a construction loan. The deed provided that the note was immediately payable if the property was sold. Sweeney and the Evolas intended to demolish an existing single-family residence on the site and to construct a three-unit condominium in its place. In 1982, following Gertrude Boyle's death, the Marin County probate court ordered the note transferred to respondent William Boyle in accordance with its distribution of Gertrude Boyle's estate. The same year, appellant Ronald Brown obtained the Evolas' interest in the property.

In 1983, the partners obtained a $580,000 construction loan; the Boyle deed of trust was subordinated to the deed held by the construction lender. The three-unit condominium was built, but only one of the units was ever sold to the Evolas. When Sweeney and Brown fell behind in their payments on the Boyle note, William Boyle twice modified the note to delay its due date. In October 1985, the construction lender and senior lienholder foreclosed on the Broderick Street real property to obtain amounts due on the construction loan. No proceeds of this sale remained after the construction

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] Sweeney and Brown stipulated that they would indemnify the Evolas to the extent that they were held liable for damages under the complaint. The judgment did not hold the Evolas liable and they are not parties on appeal.

loan and the sale expenses were paid; security for the Boyle note was thus exhausted.

In December 1985, Boyle brought suit against Sweeney, Brown, and the Evolas for defaulting on his note. After a court trial, the trial court found that this was a commercial development and that Sweeney and Brown were not entitled to antideficiency protection. Therefore, the court awarded Boyle $50,000 in damages, plus interest, attorney fees, and costs, to be paid by Sweeney and Brown. Their motion for new trial was denied.

## II. DISCUSSION

■ Sweeney and Brown contend that section 580b[3] bars the deficiency judgment. The pertinent part of this statute prohibits a deficiency judgment by a vendor against a purchaser of real property under a deed of trust given to the vendor to secure payment of the balance of the purchase price of the property. (§ 580b.)

■ Courts have determined that section 580b applies to sold-out junior lienors holding a purchase money mortgage or deed of trust. However, the statute automatically applies only to the standard purchase money mortgage transaction in which the vendor of real property retains an interest in the land sold to secure payment of the purchase price. If the transaction in question is a variation on the standard purchase money mortgage or deed of trust transaction, section 580b applies only if the factual circumstances of the transaction come within the purposes of the statute. (*Spangler* v. *Memel* (1972) 7 Cal.3d 603, 610-611 [102 Cal.Rptr. 807, 498 P.2d 1055]; *Long* v. *Superior Court* (1985) 170 Cal.App.3d 499, 504 [216 Cal.Rptr. 337]; see *Ziegler* v. *Barnes* (1988) 200 Cal.App.3d 224, 229, 232 [246 Cal.Rptr. 69]; see also 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 169, pp. 668-670.) ■ A sale of real property in which the vendor agrees to subordinate his or her senior lien under the purchase money deed of trust to the liens of construction lenders—the same factual situation as is presented in this case—constitutes a variation on the

---

[3] Section 580b provides: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser. [¶] Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof if no deficiency judgment would lie under the deed of trust or mortgage on real property."

standard purchase money mortgage transaction. (*Spangler, supra,* at pp. 611-612.)

A contrast between the standard transaction and its variation is revealing. In the standard transaction, the vendor usually sells the property to a purchaser who is going to continue the same or similar use of the property. In this situation, the present security value of the property is a reliable indicator of its actual fair market value. However, when the vendor agrees to subordinate his lien to the purchaser's construction loan, the purchaser does not intend to continue the same use of the property. The purchaser intends a different use—one that contemplates considerable improvement of the property. In this situation, the present security value of the property is not a reliable indicator of the property's ultimate value; that value will be determined by the success of the new construction, which contemplates a change in the use of the property. (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 611; *Long* v. *Superior Court, supra,* 170 Cal.App.3d at pp. 504-505; see *Ziegler* v. *Barnes, supra,* 200 Cal.App.3d at pp. 229, 231-232.) In the case at bar, the value of the property at the time of its sale was not a reliable indicator of its actual value because of the contemplated change in use represented by the plan to demolish the existing residence and build three condominium units on the site. As this is a variation of the standard purchase money mortgage transaction, section 580b does not automatically apply. We must analyze the factual setting presented by this case in light of the purposes of that statute in order to determine whether or not the provisions of section 580b apply. (*Ibid.*)

Section 580b is intended to prevent overvaluation of real property by placing the risk of inadequate security on the purchase money mortgagee in those situations where the security value of the land gives purchasers a clue as to its true market value. (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 612.) When the agreement of sale contains a subordination clause, the security value of the land at the time of the agreement gives neither vendor nor purchaser any clue as to its true market value. That market value depends on the likelihood of the success of the new construction. (*Id.,* at p. 613.)

When the agreement of sale contains a subordination clause, if section 580b is applied to prevent the vendor from suing on his or her promissory note, the risk of failure of the new development is thrust on the vendor. In fact, however, the success of the new development depends on the competence, diligence, and good faith of the developing purchaser. Under these circumstances, it is proper that the purchaser—not the vendor—should bear the risk of failure of the new development, particularly since, in the event of default, the junior lienor vendor will lose both the land and the purchase price. (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 613; *Long* v.

*Superior Court, supra,* 170 Cal.App.3d at pp. 504-505.) Overvaluation in a sale of property for development involving a subordination clause may be prevented by forcing the purchaser-developer to make realistic assessments of the likelihood of the project's success and in inducing him to exert his or her highest efforts in carrying it out. To accomplish this goal, the risk of failure of the new development is placed on the purchaser-developer by permitting the sold-out junior lienor vendor to recover a deficiency judgment in an action on the underlying promissory note. (*Spangler* v. *Memel, supra,* at p. 613; *Ziegler* v. *Barnes, supra,* 200 Cal.App.3d at p. 232; *Long* v. *Superior Court, supra,* at p. 505.) For this reason, Boyle may enforce his promissory note without violating the purpose of section 580b.

Another factor supports this conclusion. In the context of a subordination clause, the amount of the construction loan is usually extremely large. The typical vendor cannot raise the sums needed to buy at the senior sale and thereby protect his or her junior interest. The only possible protection available to the vendor is to allow a deficiency judgment against the developer-purchaser. (*Spangler* v. *Memel, supra,* 7 Cal.3d at p. 614; *Long* v. *Superior Court, supra,* 170 Cal.App.3d at p. 505.)

■■■ In their appeal, Sweeney and Brown contend that the use of the property has not changed from residential to commercial. In essence, they argue that *Spangler* and its progeny were intended to apply only if the purchasers intend a change in use—such as from residential to commercial—rather than a mere change in the intensity of a single use—such as from a single residence to a three-unit condominium. (See *Spangler* v. *Memel, supra,* 7 Cal.3d at p. 614, fn. 8; see also *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263-264 [78 Cal.Rptr. 170, 455 P.2d 106]; *Long* v. *Superior Court, supra,* 170 Cal.App.3d at p. 505.) They challenge the trial court's finding that the three-unit condominium project was a commercial one. They contend that they were residential developers and that this fact entitled them to the protection afforded by section 580b. We disagree.

Section 580b distinguishes between commercial and residential uses when the noteholder is a lender, rather than the vendor of the underlying property. (See § 580b; see also *Kistler* v. *Vasi, supra,* 71 Cal.2d at pp. 263-264.) However, this distinction is not determinative when, as here, the noteholder is the vendor. If a change in use makes the original security value of the property an unreliable indicator of its value after construction improvements have been made, then even a change from a less intensive residential use to a more intensive one is sufficient to make the transaction a variation on the standard purchase money transaction. (See *Spangler* v. *Memel, supra,* 7 Cal.3d at p. 611.) "[T]he determining factor is not the intended use per se; rather 'the purchaser does not intend to continue with the *same use*

of the property but actually intends a *different use* which contemplates considerable improvement of it.' " (*Ziegler* v. *Barnes, supra,* 200 Cal.App.3d at p. 233, italics in original [vacant lot intended to support new residence; variation did not come within § 580b protection].) In this context, a "different use" may be a change from one form of land use to another— such as from residential to commercial use—or a more intensive use of the property within the same land use classification—such as a change from a single-family dwelling to a three-unit condominium.

"[T]he broadly stated *Spangler* exception for purchase money transactions involving subordinating construction loan deeds of trust is founded upon a rationale that encompasses the case before us." (*Long* v. *Superior Court, supra,* 170 Cal.App.3d at p. 506; see Civ. Code, § 3511 [where the reason is the same, the rule should be the same].) "The pivotal criterion is that the radical change in use and value contemplated by the buyer, at once renders the security value of the subordinated purchase money security uncertain. It also significantly jeopardizes the integrity of the purchase money security by imposing the potential of a noncurable senior deed of trust foreclosure by the construction lender." (*Long, supra,* at p. 506.)

A comparison of our case with the leading case, *Spangler* v. *Memel, supra,* 7 Cal.3d 603, is revealing. In *Spangler,* the vendor owned a commercially zoned lot improved with a single residence which was converted into an office. The vendor sold the lot to a purchaser who intended to develop a three-story office building on the site. The vendor took a $63,900 promissory note, secured by a purchase money deed of trust, from the purchaser. The vendor agreed to subordinate her prior lien to construction lenders, who later loaned the purchaser $408,000. The office building was constructed, but the purchaser defaulted on the construction loan. The lender and senior lienholder foreclosed on the property. The vendor then sued the purchaser on the $63,900 promissory note. The California Supreme Court ruled that, in this situation, the purchaser—not the vendor—should accept the risk that the commercial development might not succeed. Therefore, it found that the antideficiency protection of section 580b did not protect the purchaser.

The trial court's determination that Sweeney and Brown were not entitled to the antideficiency protection of section 580b is consistent with *Spangler,* as the facts in this case constitute a similar variation on the standard purchase money mortgage transaction. As in *Spangler,* the vendor accepted a promissory note, but agreed to subordinate her deed of trust to that held by a construction lender to protect its significantly higher loan. When property improvements were complete and proved to have been a bad investment for the purchaser, the construction lender foreclosed on the

property to obtain payment on its unpaid senior lien. The foreclosure left the vendor without security to protect its subordinated junior lien. As in *Spangler,* Sweeney and Brown—the purchasers who invested the proceeds of the construction loan for development of the property to a more intensive use—should bear the risk that the development might—or here, did—prove unprofitable.

In summary, we hold that the crucial distinction is not between commercial and residential land uses, but between standard purchase money transactions and variations on this standard transaction. (See *Spangler* v. *Memel, supra,* 7 Cal.3d at pp. 610-611; *Long* v. *Superior Court, supra,* 170 Cal.App.3d at p. 504; see also *Ziegler* v. *Barnes, supra,* 200 Cal.App.3d at pp. 229, 232.) *Spangler* and its progeny instruct us that a variation of the standard purchase money transaction occurs when, after the vendor agrees to subordinate his or her deed of trust to a construction lender's deed of trust, the underlying property is to be developed for a more intensive use that makes the present value of the property an unreliable indicator of its actual fair market value. (*Spangler, supra,* at p. 611; *Long, supra,* at pp. 504-505; see *Ziegler, supra,* at pp. 229, 231-232.) If the transaction is a variation on the standard purchase money transaction, *Spangler* also instructs us to determine whether the antideficiency protection of section 580b continues to apply by examining the purpose of the statute to determine if application of the statutory bar will serve that purpose. (*Spangler, supra,* at pp. 610-611.) As this purpose would be frustrated by application of section 580b, the trial court properly found that the statute did not apply to this case.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 26, 1989. Mosk, J., was of the opinion that the petition should be granted.