Opinion
 

 POCHÉ, Acting P. J.
 

 One component of California’s antideficiency legislation bars a vendor from obtaining a deficiency judgment against a purchaser of real property under a deed of trust given to the vendor to secure payment of a purchase money interest for the property. (Code Civ. Proc., § 580b (hereafter section 580b).) Our Supreme Court has held that this provision automatically applies to sold-out junior lienors in “the standard purchase money transaction,” but has no application in cases presenting “a variation on the standard purchase money mortgage or deed of trust transaction” unless the purposes underlying section 580b will be subserved by its employment.
 
 (Spangler
 
 v.
 
 Memel
 
 (1972) 7 Cal.3d 603, 609-611 [102 Cal.Rptr. 807, 498 P.2d 1055].) The question presented is whether this exception applies to the following situation.
 

 In April of 1986 appellants (a number of individuals organized as a limited partnership called Tradewinds Associates) agreed to sell an apartment complex to Richard M. Allert for approximately $1,150,000. Allert borrowed $900,000 of the purchase price from Home Savings and Loan. This loan was evidenced by a promissory note and secured by a first deed of trust on the property. Allert also executed a group of promissory notes to appellants that were collectively secured by second and third deeds of trust.
 

 An integral aspect of the transaction was the parties’ recognition that the property would be refinanced in very short order to permit renovations. To this end, appellants agreed that if Allert paid off the loan secured by the third deed of trust, they would subordinate the second deed of trust to a new first deed which would in turn secure a “new first loan . . . from a conventional lender.” Allert thereafter expended about $220,000 for what were described at trial as “purely cosmetic” renovations; no structural alterations or changes in the building’s use were involved.
 

 The anticipated refinancing occurred the following year when Allert obtained a loan of approximately $1,270,000 from Coast Savings and Loan. The proceeds of this loan were used to pay off the obligations secured by the
 
 *893
 
 existing first and third deeds of trust. A new first trust deed was substituted to secure Coast’s loan. The parties concurrently executed and recorded a formal document evidencing their agreement concerning subordination of appellants’ second deed of trust.
 

 Allert defaulted on his obligation to Coast in 1988 leading it to commence an action for judicial foreclosure. Appellants filed a cross-complaint against Allert for the principal of their notes, which, together with ancillary charges and interest, totalled close to $102,000 at the time of trial. Coast subsequently purchased the property at a nonjudicial trustee’s sale for the amount due and owing, thus leaving nothing with which to satisfy Allert’s obligations to appellants. Finding section 580b applicable, the trial court entered judgment for Allert, which led to this timely appeal.
 

 Allert’s dealings with appellants are very much within the norm of transactions covered by section 580b, which the Supreme Court has repeatedly held “ ‘was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price.’ ”
 
 (Spangler
 
 v.
 
 Memel, supra,
 
 7 Cal.3d 603 at p. 610 [citing and quoting
 
 Roseleaf Corp.
 
 v.
 
 Chierighino
 
 (1963) 59 Cal.2d 35, 41 (27 Cal.Rptr. 873, 378 P.2d 97)].) The statute’s purposes are to (1) discourage unsound land sales by giving purchasers an indication of the property’s true market value and removing the incentive for the seller to overvalue the security, and (2) reduce instability in the market during economic downturns. (See
 
 Spangler
 
 v.
 
 Memel, supra,
 
 at p. 612.) When section 580b is applicable, the vendor can resort to the security alone for recovery of the debt. “The one taking . . . a trust deed knows the value of his security and assumes the risk that it may become inadequate. Especially does he know the risk where he takes, as was done here, a second trust deed.”
 
 (Brown
 
 v.
 
 Jensen
 
 (1953) 41 Cal.2d 193, 197-198 [259 P.2d 425].)
 

 The exceptional situation in Spangler—to which section 580b did not apply—arose out of a transaction utterly distinguishable in terms of intent and consequences. Stripped to its essentials,
 
 Spangler
 
 involved property improved with a single-family residence purchased for $90,000. Knowing that the purchaser wished to replace the residence with an office building, the seller agreed to subordinate her purchase money deed of trust to the deed of trust a commercial lender would require to secure the loan that would fund construction of the intended new use. A three-story office building was constructed with a $408,000 loan secured by a first deed of trust on the property. The venture was not a success, and the seller’s subordinated junior lien was made valueless when the lender foreclosed its senior deed of trust
 
 *894
 
 and purchased the building for the amount owed. The seller obtained a judgment for the amount of her wiped-out security interest.
 

 In holding that deficiency judgment proper, the Supreme Court distinguished that situation from the standard transaction where “the vendor usually sells the property to a purchaser who is going to continue the same or similar use of the property. The present security value of the property, therefore, is a reliable indicator of its actual fair market value.”
 
 (Spangler
 
 v.
 
 Memel, supra,
 
 7 Cal.3d 603 at p. 611.) The court determined that “since the sale contemplates radical improved and changed use of the property”
 
 (id.
 
 at p. 613), the situation before it was markedly different. “[W]here the vendor agrees to subordinate his lien to the purchaser’s construction loan, the purchaser does not intend to continue with the same use of the property but actually intends a different use which contemplates considerable improvement of it. In this . . . situation, the present security value of the property, therefore, is
 
 not
 
 a reliable indicator of the ultimate value of the property; that value will be determined by the success of the venture which contemplates a
 
 change
 
 in the use of the property.”
 
 (Id.
 
 at p. 611 [original italics].) “[T]he security value of the land at the time of the agreement gives neither vendor nor purchaser any clue as to its true market value. . . . The market value of the land depends upon the likelihood of the success of the commercial development; the success of the commercial development depends upon the obtaining of loans to construct it; the securing of these loans depends upon the ability of the purchaser to give the lender a senior security interest.”
 
 (Id.
 
 at p. 613.) Thus, subordination to construction financing entails unique risks that aggravate the jeopardy to the seller’s security. (See
 
 Roskamp Manley Associates, Inc.
 
 v.
 
 Davin Development & Investment Corp.
 
 (1986) 184 Cal.App.3d 513, 517 [229 Cal.Rptr. 186];
 
 Budget Realty, Inc.
 
 v.
 
 Hunter
 
 (1984) 157 Cal.App.3d 511, 516 [204 Cal.Rptr. 48].)
 

 Allert’s purchase did not contemplate “radical improved and changed use of the property.” Appellants sold him a 33-unit apartment building. When Coast foreclosed, the building still had 33 units. The intervening refinancing is irrelevant because it did nothing more than allow Allert to recover the sums he had already expended in making “purely cosmetic” renovations to the building.
 
 Spangler
 
 does not make the mere presence of a subordination agreement a push button that defeats the rule of automatic application of section 580b. (Cf.
 
 Budget Realty, Inc.
 
 v.
 
 Hunter, supra,
 
 157 Cal.App.3d 511 at p. 517.) It is only when a subordination agreement signals a pronounced change in the use to which the property is devoted—thus making it a variation on the standard purchase money security transaction— that the transaction is removed from the reach of the rule. (See e.g.,
 
 Boyle
 
 v.
 
 Sweeney
 
 (1989) 207 Cal.App.3d 998, 1001-1005 [255 Cal.Rptr. 153];
 
 Shepherd
 
 v.
 
 Robinson
 
 (1981) 128 Cal.App.3d 615, 625-626 [180 Cal.Rptr. 342].)
 
 *895
 
 By accepting Allert’s note, appellants extended him credit that was necessary to the consummation of the sale. Appellants retained a deed of trust securing their interest in a building they sold to Allert, who was clued as to its true market value. No construction loan is involved. This was, in short, a standard purchase money situation. (See
 
 Shepherd
 
 v.
 
 Robinson, supra,
 
 at p. 624.) Knowing the value of their security, appellants assumed the risk that it could, as it did, prove to be inadequate. (See
 
 Brown
 
 v.
 
 Jensen, supra,
 
 41 Cal.2d 193 at p. 197.) The trial court was therefore correct in recognizing the automatic application of section 580b.
 

 Appellants invert the
 
 Spangler
 
 analysis. Only in situations that are not standard transactions does
 
 Spangler
 
 call for an analysis of whether the purposes behind section 580b will be furthered. As this was a standard transaction, the only task before us is to join with the trial court in respecting the rule of automatic application of section 580b established by the Supreme Court.
 

 The judgment is affirmed.
 

 Perley, J., and Reardon, J., concurred.
 

 A petition for a rehearing was denied October 2, 1991, and appellants’ petition for review by the Supreme Court was denied December 18, 1991.