[No. S070347. June 3, 1999.]

DeBERARD PROPERTIES, LTD., Plaintiff and Respondent, v.
BUN RAYMOND LIM et al., Defendants and Appellants.

**COUNSEL**

Douglas L. Walsh; Robert K. Lee; Law Offfices of Suzuki & Ito and Paul T. Suzuki for Defendants and Appellants.

Law Offices of Ralph M. Weiss, Ralph M. Weiss and Deborah L. Weiss for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—We must decide whether, notwithstanding the protection against deficiency judgments conferred by Code of Civil Procedure section 580b (hereafter section 580b), a purchaser may waive, by contract term, that

protection in exchange for new consideration following the original purchase money sale.[1] There is a conflict in state law on this question, with *Russell* v. *Roberts* (1974) 39 Cal.App.3d 390 [114 Cal.Rptr. 305] holding that waiver is available, but *Palm* v. *Schilling* (1988) 199 Cal.App.3d 63 [244 Cal.Rptr. 600] holding that it is not.

We conclude that the statutory provision may not be waived in the circumstances of this case, and hence we affirm the Court of Appeal's judgment and disapprove *Russell*.

In 1990, Myo Za Theresa Lim and Bun Raymond Lim agreed to buy a shopping center from DeBerard Properties, Ltd., for $3.2 million. The Lims tendered a $1,120,000 down payment, assumed a first trust deed securing an obligation of $1,913,266.92 held by a bank, and signed a promissory note for $170,000 secured by a second trust deed in favor of DeBerard.

By September 1993 the Lims could no longer make payments on the obligations secured by the first and second trust deeds. The Lims hired an accountant to renegotiate their obligations to the holders of the trust deeds. The accountant renegotiated both obligations. As a result, the parties to this case executed a forbearance agreement.

The agreement halved the monthly payments from $1,416.67 to $708.33 and the interest rate from 10 to 5 percent. Also, DeBerard agreed not to foreclose, and it agreed to subordinate its trust deed to any modification of the bank loan, in order to facilitate the Lims' renegotiations with the bank. In turn, the Lims waived the protection provided by section 580b.[2]

Despite these changes, the Lims soon defaulted on their obligations to the bank and DeBerard. The bank foreclosed and extinguished DeBerard's junior security interest. DeBerard then filed this suit on the promissory note.

---

[1]Section 580b provides: "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

"Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof if no deficiency judgment would lie under the deed of trust or mortgage on the real property or estate for years therein."

[2]In pertinent part, the agreement provided: "As a material inducement [to DeBerard] for its execution of this agreement and [DeBerard's] agreement to execute a subordination agreement to facilitate [the Lims'] modification of [their] loan with [the bank], [the Lims] hereby voluntarily and expressly waive[] and relinquish[] each and every right or benefit which [they] might have under [section 580b]."

In a bench trial, the court concluded that section 580b may be waived as a matter of law and found that the Lims had voluntarily, knowingly, and intelligently waived it. The court awarded DeBerard $241,075.81 plus costs.

The Court of Appeal reversed. It concluded that section 580b's language precluded its protection from being waived.

We begin with section 580b's text. As relevant here, the statute provides: "No deficiency judgment shall lie in any event after a sale of real property . . . for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ."

■ The language of section 580b is plain. A vendor is barred from obtaining a deficiency judgment against a purchaser in a purchase money secured land transaction. "[I]n the case of a seller-financed loan for real property, i.e., a purchase money obligation, a deficiency judgment is prohibited." (*Ghirardo* v. *Antonioli* (1996) 14 Cal.4th 39, 49 [57 Cal.Rptr.2d 687, 924 P.2d 996].) "The explicit language of section 580b brooks no interpretation other than that deficiency judgments are prohibited by the purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect on the original property. To allow a purchase money creditor to circumvent the absolute rule by enforcing a . . . waiver of section 580b in exchange for other concessions would [flout] the very purpose of the rule. If the purchase money creditor retains an interest in the original property, the debtor cannot be held for a deficiency. If the purchase money creditor does not wish to accept the risk that the property will be lost through foreclosure by another secured creditor, the remedy is to either foreclose himself or destroy the purchase money nature of the transaction . . . ." (*Palm* v. *Schilling, supra,* 199 Cal.App.3d at p. 76; accord, *DCM Partners* v. *Smith* (1991) 228 Cal.App.3d 729, 738 [278 Cal.Rptr. 778].)

■ Historically we have discerned two reasons for the Legislature's decision to protect purchasers in purchase money secured land transactions. First, section 580b is a transaction-specific stabilization measure: it stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value. Second, it is a macroeconomic stabilization measure: if property values drop and the land is foreclosed upon, the purchaser's loss is limited to the land that he or she used as security in the transaction, purchasers as a class are harmed less than they might otherwise be during a time of economic decline, and the economy benefits. Discussing a prior version of the statute, we explained: "Section 580b places the risk of inadequate security on the

purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97].)

When we decided *Roseleaf*, section 580b provided, as relevant here: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property." (Stats. 1949, ch. 1599, § 1, p. 2846.) Now, the statute provides, with additions underscored and deletions in strikeout type: "No deficiency judgment shall lie in any event after a ~~any~~ sale of real property . . . for failure of the purchaser to complete his or her contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." Even more explicitly than in *Roseleaf*, section 580b provides that the vendor in a purchase money secured land transaction may not recover a deficiency judgment on the purchaser's default.

DeBerard correctly observes that in *Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055] (*Spangler*), we held that section 580b did not apply to the facts at issue, notwithstanding the statute's absolute bar to deficiency judgments in purchase money secured land sales. It contends that we should hold the statute may be waived in cases such as this.

*Spangler*, however, creates only a narrow exception to the scope of section 580b, and we decline to create another one here.

In *Spangler*, the vendor conveyed a single-family residence on Sunset Boulevard in Los Angeles to the purchaser for $90,000, consisting of $26,100 in cash and a $63,900 note secured by a purchase money deed of trust, which the vendor agreed to subordinate to future construction loans of as much as $2 million so that the residence could be replaced by an office building. The purchasers in turn agreed to waive the antideficiency judgment protection of section 580b, so that the vendor would have recourse against them should the lender of the construction loans foreclose on an anticipated higher priority encumbrance. The purchasers found a lender that, as expected, extended a $408,000 loan on condition that its deed of trust have priority over the vendor's.

Once built, the office building proved to be a commercial failure, and the lender foreclosed on its deed of trust, extinguishing the value of the vendor's subordinated security. The vendor sued the purchasers to recoup the deficiency, and we held that she could recover it.

We explained that section 580b's protection "applies automatically only to the standard purchase money situation. We are of the view that if the transaction in question is a variation on the standard purchase money mortgage or deed of trust transaction, it should be examined so as to determine whether it subserves the purposes of section 580b . . . ." (*Spangler, supra,* 7 Cal.3d at p. 611.) Thus, *Spangler* created a two-part inquiry: does the sale vary from a standard purchase money transaction, and if so, does applying section 580b's antideficiency protection comport with the Legislature's intent? Section 580b applies unless the answer to the first question is yes and the answer to the second question is no.

In *Spangler,* we held that "a sale of real property for commercial development in which the vendor agrees to subordinate his senior lien under the purchase money deed of trust to the liens of lenders of the construction money for the commercial development is a variation on the standard purchase money mortgage transaction." (*Spangler, supra,* 7 Cal.3d at p. 611.) And we held that applying section 580b would not comport with the Legislature's intent. "[T]he success of the commercial development depends upon the competence, diligence and good faith of the developing purchaser. It would seem proper, therefore, that the purchaser[—]not the vendor[—]bear the risk of failure, particularly since in the event of default, the junior lienor vendor will lose both the land and the purchase price." (7 Cal.3d at p. 613.)

Moreover, "[i]n the subordination clause context, the amount of the construction loan is usually extremely large. This is illustrated by the case at bench[,] where the subordination clause provided that the vendor would agree to subordinate for construction loans up to $2 million, and a loan of $408,000 was actually obtained. It is clear that the typical vendor in this context cannot possibly raise the astronomical sums needed to buy in at the senior sale and thereby protect his junior security interest. The only possible protection available to the vendor[,] other than careful and sometimes fortuitous choice of purchasers, is to allow a deficiency judgment against the commercial developer." (*Spangler, supra,* 7 Cal.3d at p. 614.)

The Court of Appeal has, in various decisions, properly recognized that *Spangler's* application is limited. "*Spangler* does not make the mere presence of a subordination agreement a push button that defeats the rule of automatic application of section 580b. [Citation.] It is only when a subordination agreement signals a pronounced change in the use to which the

property is devoted—thus making it a variation on the standard purchase money security transaction—that the transaction is removed from the reach of the rule." (*Thompson* v. *Allert* (1991) 233 Cal.App.3d 1462, 1466 [285 Cal.Rptr. 367].) ■ "An astute summation of the *Spangler* decision is found in *Shepherd* v. *Robinson* [(1981)] 128 Cal.App.3d 615, 625 [180 Cal.Rptr. 342]: '[A] major exception to section 580b involves a vendor who subordinates his deed of trust to a major construction loan on the property. [Citations.] The rationale here is that a major change is anticipated in the use of the property, so that the vendor has no method of determining the future value of his security interest. To hold section 580b applicable in such a situation would force the vendor to subsidize and be subject to the business risks attendant on the development of the property. The purposes of section 580b . . . would not be furthered.' " (*Palm* v. *Schilling, supra*, 199 Cal.App.3d at p. 70, fn. 7.)

In sum, *Spangler*'s rule is limited to those situations in which a pronounced intensification of the property's anticipated post-sale use both requires and eventually results in construction financing that dwarfs the property's value at the time of sale. Furthermore, the purchaser must be in a much better position than the vendor to assess the property's possible value and to understand the risks involved in capitalizing on the property's potential. Finally, under all the circumstances of the sale, including the property's development and the financing for that development, conferring section 580b's protection must unfairly thrust "the risk of the failure of the commercial development . . . upon the vendor" (*Spangler, supra*, 7 Cal.3d at p. 613), imposing on it a commercially unreasonable burden because "the success of the commercial development depends upon the competence, diligence and good faith of the developing purchaser" (*ibid.*). In a situation in which all three factors are found, stability in secured land transactions is deemed to be better maintained by creating an exception to section 580b's safe harbor. (*Spangler, supra*, 7 Cal.3d 603; *Crookall* v. *Davis, Punelli, Keathley & Willard* (1998) 65 Cal.App.4th 1048, 1064 [77 Cal.Rptr.2d 250]; *Boyle* v. *Sweeney* (1989) 207 Cal.App.3d 998 [255 Cal.Rptr. 153]; *Budget Realty, Inc.* v. *Hunter* (1984) 157 Cal.App.3d 511 [204 Cal.Rptr. 48]; see also *Wright* v. *Johnston* (1988) 206 Cal.App.3d 333, 338 [253 Cal.Rptr. 418].)[3]

---

[3]Significant risks attach to vendors' interests that are subordinated to construction loans. In *Budget Realty Inc.* v. *Hunter, supra*, 157 Cal.App.3d 511, the court noted: "The subordination of a seller's purchase money lien to construction financing exposes the seller to unique risks. Construction financing is extremely short-term financing. Further, the amount financed for construction of improvements generally dwarfs the value of the land. Thus, for a seller to salvage his position from the foreclosing construction lender, the seller must pay a 'balloon payment' typically exceeding the entire value of the land he sold. Permanent or interim 'take

*Spangler* has been the object of criticism. (Harris, *California Code of Civil Procedure Section 580b Revisited: Freedom of Contract in Real Estate Purchase Agreements* (1993) 30 San Diego L.Rev. 509.) But the Legislature appears to agree with *Spangler*'s interpretation of the statute: when it later amended the statute (Stats. 1989, ch. 698, § 12, p. 2289), it did not abrogate *Spangler* in the process. Though " 'legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent' " (*Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 563 [71 Cal.Rptr.2d 731, 950 P.2d 1086]), we find that the Legislature's failure to act suggests a lack of desire to abrogate *Spangler*, and within its narrow confines that decision remains the law.

■ This case, however, is unlike *Spangler*. DeBerard sold the Lims a shopping center. The Lims continued to operate a shopping center—they did not obtain a construction loan that dwarfed the property's value at the time of sale and then proceed to build a more intensive use. Merely renegotiating the sale's terms in an effort to salvage the transaction did not take it outside the scope the Legislature intended section 580b to have.

With commendable candor, DeBerard acknowledges that this case is different from *Spangler* in some respects, but nonetheless it advances several reasons in favor of its view that we should permit the Lims to waive section 580b.

First, DeBerard discerns that the Lims' agreement to waive section 580b's protection enabled the "dramatic" change in the terms of their obligation to DeBerard. "The workout agreement, and the renegotiation of the senior and junior loans, reallocated the risks and dramatically changed the financial nature of the commercial development. The success or failure of the workout agreement was in the hands of the borrowers and the senior lender."

As stated, however, we cannot justify permitting a waiver in disregard of the language of section 580b just because DeBerard eased the terms of the Lims' obligation to it. The fact is that the same property secured its note. (See *Thompson* v. *Allert, supra*, 233 Cal.App.3d at p. 1466.) And there was

out' financing is not accessible until the project is substantially completed. Further, the costs of the improvements are reflected only fractionally in the project's value until the improvements are substantially completed. A half-completed office building generally does not have one-half the market value of a completed office building. Subordination to construction financing substantially aggravates the jeopardy to the seller's security." (*Id.* at p. 516.) *Boyle* v. *Sweeney, supra*, 207 Cal.App.3d 998, similarly noted: "In the context of a subordination clause, the amount of the construction loan is usually extremely large. The typical vendor cannot raise the sums needed to buy at the senior sale and thereby protect his or her junior interest. The only possible protection available to the vendor is to allow a deficiency judgment against the developer-purchaser." (*Id.* at p. 1003.)

no large construction loan in furtherance of an intensified use. Nor do we agree that there was a dramatic change in the financial arrangements that might conceivably bring this case within *Spangler*'s ambit. DeBerard began with a relatively risky subordinated security interest, and ended in the same position. We observed in *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425]: "The one taking . . . a [purchase money] trust deed knows the value of his security and assumes the risk that it may become inadequate. Especially does he know the risk where he takes, as was done here, a second trust deed." Only when the transaction is sufficiently similar to that in *Spangler* will the vendor's relatively poor knowledge of the property's value trump *Brown*'s basic observation: the vendor is assumed to know the value of its security interest and act accordingly.

Next, DeBerard contends that we should take into account that the Lims were sophisticated purchasers and borrowers. The record supports its factual contention. Nevertheless, section 580b does not distinguish between sophisticated and unsophisticated purchasers, just as the relevant portion does not distinguish between residential and commercial sales. In *Wright* v. *Johnston, supra,* 206 Cal.App.3d 333, the court opined, in its discussion of section 580b: "The vendor's sophistication or lack in a case such as this is irrelevant. To have a result depend on the seller's degree of sophistication is both unworkable and unsound." (206 Cal.App.3d at p. 339.) The same is true of the purchaser.

Next, DeBerard invokes policy. Enforcing "post-default waivers of [section] 580b would encourage vendors holding junior purchase money trust deeds to execute subordination agreements in favor of the senior lender, thus enabling the senior lender to modify the senior debt. Without such a subordination, the senior lender is forced to choose between a unilateral modification . . . or foreclosure." In sum, DeBerard argues that allowing waivers of section 580b's protection will encourage flexibility in negotiating modifications of purchase money secured land sales.

In our view, DeBerard's policy argument must be addressed to the Legislature, which can consider in detail the benefit, if any, of permitting a purchaser to waive section 580b's protection in exchange for easing the terms of its obligation to its secured creditor or creditors. Indeed, we lack persuasive authority to permit a waiver of section 580b in this case. In *Bickel* v. *City of Piedmont* (1997) 16 Cal.4th 1040 [68 Cal.Rptr.2d 758, 946 P.2d 427] (abrogated with regard to its construction of the Permit Streamlining Act at issue therein [Stats. 1998, ch. 283, § 5]), we held that a party may waive a statutory provision if a statute does not prohibit doing so (16 Cal.4th at pp. 1048-1049, fn. 4), the statute's "public benefit . . . is merely incidental to [its] primary purpose" (*id.* at p. 1049), and "waiver does not seriously

compromise any public purpose that [the statute was] intended to serve" (*id.* at p. 1050). As explained *ante*, at page 663, a key purpose of section 580b is to stabilize the state's economy, to the benefit of all. The public benefit section 580b provides is one of its primary purposes. In that sense it is unlike the act at issue in *Bickel*. (Cf. 16 Cal.4th at p. 1049.)

Entities presumably expert in the law of real estate conveyancing have recently attempted to reform California's antideficiency statutes by legislation (Harris, *California Code of Civil Procedure Section 580b Revisited: Freedom of Contract in Real Estate Purchase Agreements, supra*, 30 San Diego L.Rev. at pp. 547-548), and in principle theirs is the preferred approach. As the law currently stands, "[i]f the purchase money creditor does not wish to accept the risk that the property will be lost through foreclosure by another secured creditor, the remedy is to either foreclose himself or destroy the purchase money nature of the transaction by reconveying the deed or mortgage on the original real estate in exchange for the substitution of other security." (*Palm* v. *Schilling, supra*, 199 Cal.App.3d at p. 76.)

Finally, DeBerard notes that *Russell* v. *Roberts, supra*, 39 Cal.App.3d 390, is authority for its view. We recognize that a few Court of Appeal decisions have declared that a purchaser's post-sale waiver of section 580b's protection in exchange for consideration is generally valid—i.e., even when, unlike the facts of *Spangler*, the property is not distinctly improved by means of a construction loan to which the vendor's interest is subordinated. (*Goodyear* v. *Mack* (1984) 159 Cal.App.3d 654, 659-660 [205 Cal.Rptr. 702] [dictum]; *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615, 626 [180 Cal.Rptr. 342] [dictum]; *Russell* v. *Roberts, supra*, 39 Cal.App.3d at pp. 394-395.)

The only decision to discuss the point is *Russell*. That court stated that section 580b may be waived "after the sale and deed of trust transaction are completed." (*Russell* v. *Roberts, supra*, 39 Cal.App.3d at p. 395.) *Russell* drew an analogy to *Salter* v. *Ulrich* (1943) 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344], which stated: "Since necessity often drives debtors to make ruinous concessions when a loan is needed, [Code of Civil Procedure] section 726 should be applied to protect them and to prevent a waiver in advance. This reasoning, however, does not apply after the loan is made, when all rights have been established and there remains only the enforcement of those rights." (*Id.* at p. 267.)

*Russell* also found a policy reason to support its conclusion. "We note also . . . *Spangler* v. *Memel*, 7 Cal.3d 603, 610 [102 Cal.Rptr. 807, 498 P.2d 1055], which expresses the conclusion, 'that section 580b automatically

applied only to the standard purchase money transaction and that with respect to variants from this standard purchase money transaction, section 580b would apply only if the factual circumstances came within the purposes of the section. . . .' It seems clearly not 'within the purposes of the section' to deny a vendee whose rights have long been established, and who is no longer subject to the coercion of the lender, the privilege of waiving for a new consideration one of those earlier attained rights." (*Russell* v. *Roberts, supra,* 39 Cal.App.3d at p. 395.)

With regard to *Russell*'s discussion of *Salter* v. *Ulrich, supra,* 22 Cal.2d 263, *Palm* v. *Schilling, supra,* 199 Cal.App.3d 63, and the Court of Appeal herein observed that *Salter* contains a dictum noting that Code of Civil Procedure section 726 is an object of Civil Code section 2953, which voids a borrower's express agreement to waive rights or privileges under certain statutes when, or "in connection with," "making" or "renewing" a loan secured by an encumbrance on real property. The list of statutes includes section 726 but not section 580b. In *Salter,* we suggested that because Civil Code section 2953 prohibits a contemporaneous waiver of Code of Civil Procedure section 726, implicitly it does permit such a waiver after the sale. (22 Cal.2d at p. 267.) From that premise, *Russell* v. *Roberts* concluded that section 580b also may be waived following a sale. (39 Cal.App.3d at p. 395.) *Palm* decided, however, that because the terms of section 580b run counter to the notion of waiver, no matter when a purchaser might seek it, there was no need for the Legislature to mention that statute in Civil Code section 2953. "There would be no need to include section 580b in section 2953's list of permissible waivers[,] because there never can be a 'subsequent' contractual waiver of section 580b." (*Palm* v. *Schilling, supra,* 199 Cal.App.3d at p. 76.)

The interplay between section 580b and Civil Code section 2953 is complicated and susceptible of differing interpretations (see Riesenfeld, *California Legislation Curbing Deficiency Judgments* (1960) 48 Cal.L.Rev. 705, 717-718), but we do not believe that the Legislature's failure to cite section 580b in Civil Code section 2953 permits a post-sale waiver of antideficiency judgment protection. Section 580b applies "in any event." As stated, that strict language, present in section 580b both now and when the Legislature enacted Civil Code section 2953 in 1937 (see Stats. 1933, ch. 642, § 5, p. 1673 [enacting § 580b]; Stats. 1937, ch. 564, § 1, p. 1605 [enacting Civ. Code, § 2953]), runs counter to the possibility of waiver, contemporaneous or subsequent.

With regard to the policy reasoning of *Russell* v. *Roberts, supra,* 39 Cal.App.3d 390, we agree with *Palm* that " '[r]uinous concessions' are, if

anything, easier to obtain when the debtor is in default. Then, the temptation to 'press the bet' is likely to be stronger than the poor decision to purchase the property in the first instance." (*Palm* v. *Schilling, supra,* 199 Cal.App.3d at p. 73.) *Russell* also relied on *Morello* v. *Metzenbaum* (1944) 25 Cal.2d 494 [154 P.2d 670], and *Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463]. But neither of those cases, any more than *Salter* v. *Ulrich, supra,* 22 Cal.2d 263, supports a claim that section 580b may ordinarily be waived following a purchase money land sale.

We therefore disapprove the discussion in *Russell* v. *Roberts, supra,* 39 Cal.App.3d at pages 394-395, and the dicta in *Goodyear* v. *Mack, supra,* 159 Cal.App.3d at pages 659-660, and *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d at page 626.

We affirm the Court of Appeal's judgment.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.**—I concur in the majority opinion. I write separately to comment further on the purposes of Code of Civil Procedure section 580b. As the majority notes, in *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97], this court articulated two purposes for section 580b: preventing sellers from overvaluing real property and moderating the economic dislocation caused by downturns in property values.

As to the first purpose, commentators and the Court of Appeal have noted the lack of economic logic to the argument that Code of Civil Procedure section 580b reduces overvaluation of properties. (See *Budget Realty, Inc.* v. *Hunter* (1984) 157 Cal.App.3d 511, 515-516 [204 Cal.Rptr. 48]; Harris, *California Code of Civil Procedure Section 580b Revisited: Freedom of Contract in Real Estate Purchase Agreements* (1993) 30 San Diego L.Rev. 509, 516-517; Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) One-Action and Antideficiency Rules, § 4.27, pp. 207-208; Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) p. 270.) Assume the fair market value of the property is X. If the seller finds a buyer willing to pay 2X or 3X for the property, the seller is no worse off selling for that price (and often will be better off) than selling for X. In either case, if default occurs, the price the seller will be able to resell the property for is the same regardless of the initial selling price (assuming a stable property market, that price will be X). The seller gains nothing by refusing to sell its property for the higher price, and loses nothing by selling the property for more than its value as security. Although overvaluing may increase the risk of default in property bought for commercial purposes (by

increasing the income stream the property must generate in order to pay for itself), the increased selling price may well compensate the seller for the increased risk. Moreover, section 580b encourages buyers to offer more than the market value of the property because they know that in the case of default they will not be personally liable for any deficiency. In my view, the criticisms of the overvaluation rationale of *Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d 35, described above are well founded.