[No. G004359. Fourth Dist., Div. Three. Apr. 13, 1988.]

LELAND D. ZIEGLER, Plaintiff and Respondent, v.
WILLIAM BARNES, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), Part V is not published as it does not meet the standards for publication.

COUNSEL

Sol P. Ajalat for Defendant and Appellant.

Phillip Schlosberg for Plaintiff and Respondent.

OPINION

SONENSHINE, Acting P. J.—William Barnes appeals a judgment allowing Leland Ziegler to collect on a promissory note secured by a second trust deed which became valueless upon foreclosure by the construction money lender. Barnes contends the note was a purchase money obligation for which a deficiency judgment is proscribed under Code of Civil Procedure section 580b[2] and which fails to meet the requirements, pursuant to which

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

section 580b would not apply, outlined in *Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055].

## I

In 1978, Leland Ziegler and his wife created a family trust, transferring to it real property owned by them. Included in the trust was an undeveloped residential view lot in the Three Arch Bay community in Laguna Beach. In December, Ziegler signed an agreement to purchase a condominium in Hawaii. The agreement, specifically subject to formulation of an Internal Revenue Code section 1031 (26 U.S.C. § 1031) exchange with the Laguna property, provided for a down payment of $57,000 and assumption of an existing note and trust deed in the amount of $115,000.

In January 1979, Ziegler assigned his rights under the purchase agreement to David Jensen. The owner of the condominium apparently refused to sell to either Jensen or Ziegler, a stance which precipitated a federal suit for specific performance. In March, Jensen was awarded title pursuant to his execution of an assumption deed.

There is, however, no argument Ziegler and Jensen had an identity of interest in the Hawaii property; the arrangement was a necessity for the ensuing exchange agreement. Ziegler provided the down payment, arranged for financing of the existing trust deed, and in essence was the "owner" of the property. Jensen never met or spoke with Ziegler's attorney, who handled all the negotiations. Jensen testified he was only involved as a favor to Ziegler; he merely signed the papers given to him and knew nothing of the machinations involved.[3]

Meanwhile, Ziegler was negotiating with Wesley Sartain and Ronald Rauch, both developers, for the sale of the Laguna property. In February, the three finalized an Exchange Agreement and Joint Escrow Instructions which recited that Sartain and Rauch would purchase the Hawaii condominium from Jensen for $185,000; Jensen would receive a $185,000 promissory note secured by a first deed of trust on the Laguna property; and Sartain and Rauch would trade the Hawaii property to Ziegler in exchange for the Laguna property.

The $185,000 note carried no interest and was due January 1, 1981. The trust deed recorded against the Laguna property stated the beneficiary would, upon request, subordinate to a construction loan in an amount not

---

[3] While there was an argument below the arrangement was fraudulent, the court disagreed, and the issue has not been pursued on appeal.

to exceed $250,000. The exchange agreement also mentioned the subordination, but clearly made it the responsibility of *Ziegler*: "Ziegler shall cause to be deposited [in the exchange escrow] a Subordination Agreement in favor of the lender providing construction financing . . . in an amount not in excess of $250,000 and otherwise in form and substance reasonably acceptable to counsel for such lender and counsel for Ziegler."

In late 1980, Rauch sold his interest to Sartain who enlisted Matthew Chicklo, an attorney, to assist in the project. The two were financially unable to obtain approval of a construction loan and approached William Barnes, who joined the venture and provided the necessary financial assurances.

No loan was approved by January 1, 1981, the due date on the promissory note. However, Jensen took no adverse action. In February, Chicklo approached Ziegler with a new proposition: because a larger construction loan than contemplated was now required, he offered to pay $90,000, from any loan proceeds, toward the note and an incentive of $5,000 if Ziegler would agree to subordinate to a first trust deed in the amount of $370,000. Douglas Morrison, Ziegler's attorney, accepted on Jensen's behalf; he forwarded to Chicklo a new promissory note in the amount of $95,000. Executed by Sartain, Chicklo, and Barnes, the note was due January 11, 1982, or the date on which a certificate of occupancy was issued for the Laguna property, whichever first occurred.

The Barnes group applied for, and was granted, a loan of $422,500, from which $87,959 was remitted to Jensen, and the $95,000 obligation was subordinated to the construction loan. Progress continued on the residence but no payments were made, except minor interest amounts, on either the construction loan or Jensen's note. The bank foreclosed, realizing enough to cover its losses and wiping out the junior trust deed held by Jensen. Jensen assigned the note to Ziegler who filed a complaint for its collection. Following a court trial, judgment was entered for Ziegler.

## II

### The $185,000 Note

Barnes contends both promissory notes and their related second trust deeds are purchase money security interests; thus, any claim for a deficiency judgment after foreclosure by the first trust deed holder is barred by section 580b. That section provides, in part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or

mortgage, given to the vendor to secure payment of the balance of the purchase price of real property . . . ."

In a standard purchase money transaction, the seller, in order to realize his full sales price, accepts a promissory note secured by a trust deed on the purchased property, representing all or a portion of the cash due under the sales agreement. If this trust deed is the only encumbrance, the seller, if forced to foreclose, may realize less than the original purchase price. Or if the seller is unable to repurchase the property in the event of foreclosure by a primary lender in senior position, the security disappears. Because of the proscription of section 580b, the seller may take no action on the promissory note in either case: "The one taking . . . a [purchase money] trust deed knows the value of his security and assumes the risk that it may become inadequate." (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425].)

Ziegler disagrees with Barnes's assessment of the character of the $185,000 note. He insists Sartain's and Rauch's purchase of the Hawaii property was the only transaction generating a promissory note and trust deed; it was the $185,000 due to Jensen for the Hawaii condominium which the promissory note represented and which was secured by the Laguna property. Thus, he argues, Jensen was the only entity with a purchase money note—yet the note was *not* secured by the subject property, removing him from the bar of section 580b.

If this was the only transaction in controversy, we would agree—*if* Sartain and Rauch owned the property to which the trust deed attached. However, they did not own the property until the simultaneous, contingent, and *necessary* exchanges occurred as outlined in the Exchange Agreement. How could Sartain and Rauch have encumbered the Laguna lot unless they owned the property?[4] Would Ziegler, who now argues this was not a purchase money note because the trust deed attached to the Laguna property, have allowed a stranger to burden his property with a lien? We think not.

Ziegler masterminded the entire purchase and exchange process. As the original owner of the Laguna property, he had the "greater knowledge of the value of the . . . . land . . . ." (*Roseleaf Corp.* v. *Chierighino, supra,* 59

---

[4] In *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97], upon which Ziegler relies, a corporate vendor took back a first trust deed on the hotel it sold to Chierighino. The remainder of the purchase price was reflected by second trust deeds on three other properties *"owned* by [Chierighino]." (*Id.,* at p. 38, italics added.) While section 580b precluded action on the note secured by a trust deed on the purchased property, the second trust deeds were not subject to the same limitations: "if there is any merit in the theory that 'the vendor knows the value of his security and assumes the risk of its inadequacy,' that theory does not apply here. There is no reason to assume that Roseleaf had any greater knowledge of the value of the Chierighinos' land than did the Chierighinos." (*Id.,* at p. 43.)

Cal.2d 35, 43.) It was he who advanced the down payment for Jensen's purchase of the Hawaii property, continued the underlying note payments, arranged for Sartain to purchase the Laguna property, and in the process managed to obtain the Hawaii condominium. Jensen expended nothing for his titular ownership of the condominium. On the other hand, Sartain and Rauch obtained the Laguna property encumbered by a trust deed, naming Jensen as beneficiary, but in the exact amount of their *offer to Ziegler*.

The Internal Revenue Service may sanction the "straw man" approach in tax-free exchanges of property; we cannot condone its use to place vendees at greater risk than would ensue from a normal two-party transaction. If a vendee cannot by contract waive purchase money protection (*Palm* v. *Schilling* (1988) 199 Cal.App.3d 63, 75-76 [244 Cal.Rptr. 600]), we refuse to find that protection dissipated by agreeing to an exchange, for the *vendor's advantage*, which purports to pass the purchase money through a third party.

The original $185,000 note represented Sartain's and Rauch's payment *to Ziegler* for the Laguna property. Therefore, the trust deed securing the note was a purchase money encumbrance, despite Jensen's appearance as beneficiary.

## III

### *The $95,000 Note*

■ The January 1981 promissory note was but a substitute, albeit smaller to reflect payments made, for the original note. The character of the money due thereunder had not changed. (*Lucky Investments, Inc.* v. *Adams* (1960) 183 Cal.App.2d 462, 466 [7 Cal.Rptr. 57].)

Moreover, merely because additional parties agree to pay the remaining purchase money debt does not change the status of the *vendor*—i.e., absent the concerns of *Spangler* v. *Memel, supra,* 7 Cal.3d 603, he is still not entitled to a deficiency judgment. (*Goodyear* v. *Mack* (1984) 159 Cal.App.3d 654, 657 [205 Cal.Rptr. 702]; *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615, 623, fn. 2 [180 Cal.Rptr. 342].)[5] ■ "The explicit language of section 580b brooks no interpretation other than that deficiency judgments are prohibited by a purchase money mortgagee so long as a

---

[5] To find otherwise would defeat the purposes of section 580b. A vendor would be precluded from pursuing a deficiency judgment on the original purchase money note; yet, if a substitute note, in the amount then due, is accepted, and/or subsequent owners accept responsibility for its repayments, the vendor magically is removed from the statute's constraints.

purchase money mortgage or deed of trust is in effect on the original real property." (*Palm* v. *Schilling, supra,* 199 Cal.App.3d 63, 76.)[6]

## IV

■ We next examine whether subordination of the note to a construction loan changes the rights of the holder in the event of foreclosure by the superior lienholder. In *Spangler* v. *Memel, supra,* 7 Cal.3d 603, the court declined to enforce section 580b against vendors who were required, pursuant to a sales agreement, to subordinate their trust deeds to a construction loan secured by the buyers. (*Id.,* at p. 614.)

Here, there was a subordination clause present in the three-way exchange agreement as well as in the trust deed securing the $185,000 promissory note to Jensen. However, both indicated subordination would be to a construction loan not to exceed $250,000. Had that remained the amount of the loan, we would not question Ziegler's right to further action on the promissory note in the event of foreclosure by the lender.

The issue is whether, when the note was due and payable, yet no payment was forthcoming, Ziegler (in the guise of Jensen) lost his *Spangler* protection by renegotiating not only the amount of the note but the size of the construction loan to which he remained junior. We are persuaded, under the circumstances of this case, he did not.

*Spangler* concluded "that when in the sale of real property for commercial development, the vendor pursuant to the agreement of sale, subordinates his purchase money lien to the lien securing the purchaser-developer's construction loan and thereafter, upon the default of the purchaser-developer, loses his security interest after sale or foreclosure under the senior lien, section 580b should not be applied to bar recovery by the junior vendor lienor of the unpaid balance of the purchase price of the property." (*Spangler* v. *Memel, supra,* 7 Cal.3d 603, 614, fn. omitted.) In particular, the

---

[6]We recognize the original classification of a promissory note and trust deed is not cast in stone. A purchase money trust deed may retain its characterization upon the property's resale, whether assumed by the new purchasers or renegotiated by them. (*Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1 [76 Cal.Rptr. 891]; *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615.) Similarly, cancellation and replacement with new notes, secured by the same property, transfers purchase money status to the new notes. (*Lucky Investments, Inc.* v. *Adams, supra,* 183 Cal.App.2d 462.) However, the purchase money nature of a note and trust deed may be lost where security for the note is later transferred from the purchased property to other real estate owned by the debtor. (*Goodyear* v. *Mack, supra,* 159 Cal.App.3d 654.)

In like fashion, a nonpurchase money note may retain its character through a subsequent transaction (*Paramount Sav. & Loan Assn.* v. *Barber* (1968) 263 Cal.App.2d 42x166 [69 Cal.Rptr. 390]) or be transmuted *into* a purchase money obligation (*LaForgia* v. *Kolsky* (1987) 196 Cal.App.3d 1103 [242 Cal.Rptr. 282]).

court noted when a construction loan is utilized, unlike the situation in the usual purchase money transaction, the vendee "intends a different use . . . [and] the present security value of the property . . . is *not* a reliable indicator of the ultimate value of the property . . . ." (*Id.,* at p. 611.)

"If the purchase money security transaction is a variation of the standard, then application of section 580b turns upon whether such application would serve the recognized purposes of that statute." (*Long* v. *Superior Court* (1985) 170 Cal.App.3d 499, 504 [216 Cal.Rptr. 337].) The avowed purpose of section 580b is to place the risk of overvaluation on the seller, who is presumed to know the value of his or her property. In the case of subordination to a construction loan obtained by the buyer, neither the seller nor the buyer knows the fair market value; it will depend upon the success of the venture. That success in turn depends upon obtaining satisfactory loans, and securing the loans is dependent upon promising the lender a primary security position. (*Spangler* v. *Memel, supra,* 7 Cal.3d 603, 613.) Applying section 580b under these circumstances would place the risk of the venture upon the seller, a risk which should remand to the buyer upon whose competence, diligence, and good faith the undertaking depends.

Here, at the time the new note was executed, there was no construction on the Laguna lot; Ziegler had no more notion of what the property would be worth, if timely and efficiently improved, than he did when the first agreement of sale was prepared. He was neither a builder nor a developer. His only alternative to agreeing to the increased construction loan was to lose the sale of the property.

The risks attendant in subordinating were substantial: the lot was vacant; although a view lot, the terrain was precipitous and difficult to build upon; there were myriad permits to obtain; the construction loan was due less than one year after it was obtained; interest rates were highly volatile; and, the residence would need to be built *and* sold speedily. Ziegler was "relegated to reliance upon [his] respective buyers to perform successfully and fully pay the purchase balance." (*Long* v. *Superior Court, supra,* 170 Cal.App. 3d 499, 507.)

Ziegler had agreed in the original purchase agreement to subordinate, although to a lesser amount. There is no reason he could not, absent other considerations, agree to an increase in the construction loan. He merely modified the subordination agreement when the time for performance arrived. Moreover, while continuing in second position to a larger primary loan, the nature of the obligation secured by his trust deed remained the same, i.e., the balance of the purchase price.

Barnes insists the present situation differs sufficiently from *Spangler* to require application of section 580b despite subordination of the purchase money mortgage to a construction loan. First, he claims Ziegler was compensated for his risk because an additional $5,000 was paid when subordination was necessary. As noted in Chicklo's letter to Ziegler, "As an incentive to you to subordinate the balance of your note, I offered to Doug [Ziegler's attorney] to increase the amount from $90,000 to $95,000 . . . ."

But even a cash payment offered at the time a subordination agreement is confirmed, if it does not negate the risk of subordination, will not defeat the right to a deficiency judgment. (*Roffinella* v. *Sherinian* (1986) 179 Cal.App.3d 230, 234 [224 Cal.Rptr. 502].) The *Roffinella* plaintiffs agreed, in the contract of sale, to subordinate at a later date. The buyer was continually late in its payments, yet no foreclosure was instituted. The plaintiffs decided, as did Ziegler, "to give appellants time to put the deal together." (*Ibid.*) At the time of subordination, plaintiffs agreed to a six-month moratorium on payments and received a shortened maturity date and $1,100 in exchange for subordinating, without jeopardizing their position.[7]

Second, Barnes states, "In the instant facts, a residence was constructed on what was previously an unimproved residential lot. The real property and its intended use was never modified." However, the determining factor is not the intended use per se; rather, "the purchaser does not intend to continue with the *same use* of the property but actually intends *a different use* which contemplates considerable improvement of it." (*Spangler* v. *Memel, supra,* 7 Cal.3d 603, 611, italics added.) The property, a vacant lot, was not in "use" when sold; the purchaser envisioned considerable improvement—the construction of an expensive residence, as evidenced by the size of the required construction loan.

 We conclude the trial court correctly determined the defendants were not entitled to the protection of section 580b.[8]

---

[7] We note the recent decision in *BMP Property Development* v. *Melvin* (1988) 198 Cal.App.3d 526 [243 Cal.Rptr. 715] where notes and trust deeds were classified as purchase money obligations even though a major portion of the funds was used for purposes extraneous to meeting the purchase price, i.e., "to pay real estate commissions, escrow fees, recording costs and . . . personal obligations." (*Id.,* at p. 529.)

[8] The trial court reached this result by another path. However, " 'a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

## V*

. . . . . . . . . . . . . . . . . . . . . . . .

Judgment affirmed. Respondent to receive costs.

Crosby, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 1988.

---

*See footnote 1 , *ante*, page 224.