934 P.2d 809

BANK ONE, ARIZONA, N.A., formerly known as The Valley National Bank of Arizona, a national banking association, Plaintiff, Counterdefendant–Appellant, Cross Appellee,

v.

Edward R. BEAUVAIS and Mary Ellen Beauvais, husband and wife, Defendants, Counterclaimants–Appellees, Cross Appellants.

No. 1 CA–CV 96–0301.

Court of Appeals of Arizona, Division 1, Department C.

March 18, 1997.

246

Johnston, Maynard, Grant & Parker, P.L.C. by Frank L. Murray, Michael D. Curran, Phoenix, for Appellant/Cross Appellee.

Terry A. Dake, Ltd. by Terry A. Dake, Phoenix, for Appellees/Cross Appellants.

GRANT, Judge.

In this appeal, we must decide whether the extension, renewal or refinancing of a purchase-money loan transformed the renewed or new loan into a non-purchase-money obligation. We hold that under the facts of this case, the trial court correctly held that the renewed or new loan retained its character as a purchase-money note.

## FACTS AND PROCEDURAL HISTORY

In 1988, appellees Edward R. and Mary Ellen Beauvais ("the Beauvais") obtained a $75,000 loan ("the 1988 loan") from appellant Bank One ("the Bank"). The loan proceeds were used to exercise options on 30,000 shares of America West Airlines stock. The 30,000 shares were pledged as collateral for the 1988 loan.

In 1989, the Beauvais applied to the Bank for a loan needed for the purchase of their new home. The Bank agreed to loan the

Beauvais $240,000. On March 29, 1989, the 1988 loan and the $240,000 loan were consolidated into a single promissory note of $315,000 ("the consolidated loan"). The Bank records show that $75,000 of the consolidated loan was used to pay off the 1988 loan and $240,000 was used to purchase the Beauvais' residence. The consolidated loan was secured by the 30,000 shares of America West stock and a second-position deed of trust on the Beauvais' new residence.

The Beauvais made principal payments of about $125,000 on the consolidated loan. However, they were unable to pay off the remaining $190,000 in March 1992, as called for in the note. The Beauvais executed a promissory note dated June 1, 1992, in the amount of $190,000 ("the workout note"); they describe this note as an extension of the 1989 consolidated loan. Both in correspondence when the workout note was executed, and at a later deposition, bank officials characterized the note as a "subsequent renewal" of the $315,000 note, and as a note to "extend" the 1988 loan. Bank records, however, show the $190,000 remainder of the consolidated loan as being paid off with the workout loan proceeds. In this case, the Bank takes the position that the workout note was for a workout loan. The 1992 workout note lists additional stock and the deed of trust dated March 29, 1989, which was a second-position lien on the Beauvais' residence, as the security for the note.

The Beauvais made monthly principal payments of $3,000 in July, August, and September of 1992. At the Beauvais' request, in October 1992, the parties entered into a modification agreement by which the Bank agreed to waive the $3,000 principal payments to be made in November and December of 1992, and January of 1993, in exchange for a $32,676.24 principal reduction to be made by October 8, 1992. The parties agreed that the proceeds for the principal reduction payment came from a sale of the America West stock which was part of the security for the workout note.

The Beauvais failed to make any further monthly payments required by the workout note. In December 1993, the Bank sued the

Beauvais on the consolidated loan. It alleged that a principal balance of more than $144,000 was owed on the note. However, the Bank sought only the principal amount of $75,000 plus interest, which it characterized as the non-purchase-money portion of the note.

■ The Bank filed a Motion for Summary Judgment, arguing that it was entitled to payment of the $75,000 because it was a non-purchase-money loan and thus was not affected by the antideficiency provision of Arizona Revised Statutes Annotated ("A.R.S.") section 33–729(A).[1] The trial court found that there was no support in the loan documents, statutes, or case law for the Bank's request to bifurcate the 1989 consolidated loan into purchase-money and non-purchase-money components. The trial court also noted that the Bank's representative had testified that there was no manner for either the bifurcation of the loan or the apportionment of the proceeds to occur. Pointing out that the Bank had raised arguments concerning the workout note, although it had not sued on that note, the court denied the Bank's Motion for Summary Judgment and allowed it to amend its complaint to sue on the workout note and to specifically allege entitlement to relief under the workout loan.

After the Bank filed its Amended Complaint, the Beauvais filed a counterclaim alleging that if the remainder of the 1989 consolidated loan had been paid off by the workout loan, as the Bank alleged and admitted in its complaint, their security for the 1989 loan had been extinguished, and thus the Bank had wrongfully enforced its extinguished lien by forcing the sale of stock and had thereby wrongfully converted proceeds from the liquidated stock. The Beauvais sought damages for the loss of the stock and for loss of their house to foreclosure under the first deed of trust. The Beauvais alleged that the foreclosure occurred because the Bank would not release its lien so that the Beauvais could sell the house before it was sold through foreclosure.

The Bank again moved for summary judgment. It argued that the workout note was not a purchase-money obligation because the note evidenced a new loan made three years after the Beauvais purchased their home, and it was used to pay off existing obligations, rather than to purchase a residence that would fall within the scope of the anti-deficiency statute. Alternatively, the Bank argued that it was entitled to be paid $31,643.45, plus interest, which represented the pro rata portion of the amount owing under the workout note attributed to the non-purchase-money part of the loan. The Bank also moved for summary judgment in its favor on the counterclaim, arguing that the Beauvais acknowledged the validity of the existing liens in the modification agreement, and they provided a full release to the Bank of any existing claims.

The trial court found that the workout loan was an extension of the 1989 consolidated loan and thus that it was a purchase-money, non-recourse note and that the Bank had no cognizable action under A.R.S. section 33–814(E). The court renewed its prior finding that the evidence in the record did not provide a method by which the workout loan could be apportioned between purchase-money and non-purchase-money components. Therefore, the court denied the Bank's Motion for Summary Judgment on its complaint and granted its Motion for Summary Judgment on the counterclaim.

Based on the trial court's ruling, the Beauvais moved for summary judgment on the complaint. The trial court granted the Beauvais' motion and entered judgment dismissing the complaint and counterclaim. The Bank timely appealed from the judgment, and the Beauvais filed a cross-appeal from the dismissal of their counterclaim. This court has jurisdiction pursuant to A.R.S. section 12–120.21(A)(1).

## ISSUES

The issues in this appeal are:

I. Whether, under the facts of this case, Arizona's anti-deficiency protections apply

---

1. A "purchase money mortgage" for purposes of Arizona's antideficiency statutes is one that encumbers the property being sold. *Cely v. DeCon-* *cini, McDonald, Brammer, Yetwin & Lacy, P.C.,* 166 Ariz. 500, 505, 803 P.2d 911, 916 (App. 1990).

to prevent the Bank from enforcing its right to obtain payment under a workout loan note secured by a second-position lien on the same residence owned by the debtor which had secured the initial note and by other collateral security.

II. Whether the trial court properly denied the Beauvais' counterclaim against the Bank for conversion.

## DISCUSSION

### A. Does the Anti–Deficiency Statute Apply to the Workout Note?

On appeal, the Bank argues that the workout note evidenced a new loan that was not an obligation incurred in connection with the purchase of the residence. It contends that the workout note was motivated by the Beauvais' desire to ease the terms of their 1989 consolidated loan and that the note evidencing the 1989 loan was extinguished by the workout loan. The Bank thus concludes that the workout note is a new and independent obligation separate and distinct from the initial purchase-money loan such that the workout note must be considered a non-purchase money obligation.[2]

The Beauvais respond that the facts show that the workout note was an extension of the 1989 consolidated note. Accordingly, they argue that the loan continued as a purchase-money obligation protected by the Anti–Deficiency Statutes. In any event, they contend it is contrary to the intent of the Anti–Deficiency Statutes to subject homeowners who refinance their mortgages to deficiency judgments.

We first note that the parties' arguments show that there is a fact dispute concerning whether the workout loan was either an extension or renewal of the 1989 loan, or was a new loan. The record contains evidence to support both theories. Thus, the trial court's decision on summary judgment concerning the nature of the workout loan involves disputed facts that render the question a matter for a trier of fact. Ariz. R. Civ. P. 56(c). However, because we conclude that the ultimate legal result is the same whether the workout note is an extension, renewal, or new obligation, we are deciding the question of law that will resolve this case, rather than remanding for a trier-of-fact decision on the nature of the workout transaction.

The legal question we consider is whether, under the facts of this case, the workout note was a non-purchase-money note under which the Bank could waive the security, sue on the note, obtain a judgment and then attempt to satisfy the judgment from assets of the Beauvais other than the property which is subject to the deed of trust. This question is one of first impression in Arizona, but we are guided by the Arizona Supreme Court's decision in *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1988).

In *Baker*, the court considered the interplay of Arizona's Anti–Deficiency and Election of Remedies Statutes, A.R.S. section 33–729(A), which concerns purchase-money mortgages; A.R.S. section 33–814(E) (now A.R.S. section 33–814(G)), concerning deeds of trust; and A.R.S. section 33–722, which allows creditors to elect remedies.[3] The

---

2. The Bank has made no argument on appeal concerning bifurcation of the 1992 note and collection of the non-purchase money portion of the note. Therefore, we do not consider this issue that was raised in the trial court. *But see Nestle Ice Cream Co. v. Fuller*, 186 Ariz. 521, 924 P.2d 1040 (App.1996) (In a foreclosure on real property to pay a promissory note, if the creditor obtained assets of the debtor through involuntary means, the creditor must apply liquidation amounts ratably to the secured indebtedness.).

3. A.R.S. section 33–729(A) provides in relevant part:

[I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase

price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.
A.R.S. section 33–814(G) provides:
 If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling

*Baker* court concluded that when a deed of trust is involved, and A.R.S. section 33–814(G) applies, the anti-deficiency provision prevents a creditor from waiving the security and bringing an action on the note. 160 Ariz. at 104, 770 P.2d at 772.

In a supplemental opinion, the *Baker* court clarified its initial holding. 160 Ariz. at 105–07, 770 P.2d at 773–75. It addressed the question of whether, under *Baker*, creditors who made non-purchase-money loans secured by deeds of trust were prohibited from waiving the security and suing on the note pursuant to A.R.S. section 33–722. The court noted that the mortgage Anti–Deficiency Statute, A.R.S. section 33–729(A), only applies to purchase-money mortgages, but the deed of trust Anti–Deficiency Statute, A.R.S. section 33–814(G), is not limited to purchase-money collateral. 160 Ariz. at 106, 770 P.2d at 774. However, the *Baker* court concluded that if a deed of trust beneficiary chooses to foreclose judicially, as is done with a mortgage, the creditor can elect to waive the security under A.R.S. section 33–722 and sue on the note. *Id.* at 107, 770 P.2d at 775. Accordingly, stated the court, "[b]y choosing judicial foreclosure, the creditor can obtain a deficiency judgment in all cases except those dealing with purchase-money collateral on the residential property described in A.R.S. § 33–729(A)." *Id.; Citibank v. Bhandhusavee*, 188 Ariz. 434, 937 P.2d 356 (App.1996) (A creditor's failure to comply with the requirements of A.R.S. section 33–814 does not bar enforcement of a judgment by garnishment against the debtor's nonexempt earnings.).

In *Resolution Trust Corp. v. Segel*, 173 Ariz. 42, 839 P.2d 462 (App.1992), we examined the impact of the *Baker* holding on non-purchase-money loans that were secured by second-position deeds of trust on residential property of less than two and one-half acres with a one- or two-family residence. In *Segel*, the court held that because the lender did not institute trustee's sale proceedings

and the deeds of trust secured non-purchase-money obligations, the lender was entitled to waive its security and sue directly on the notes under A.R.S. section 33–722. *Id.* at 44–45, 839 P.2d at 464–65.

 As can be seen from *Baker* and *Segel*, a decisive question in determining the rights of a creditor when a deed of trust is involved is whether the collateral secures a purchase-money or non-purchase-money obligation. Therefore, in this case, the characterization of the workout note as purchase-money or non-purchase-money is the key to determining whether the Bank may maintain its action on the note.

To aid in our assessment of the note, we look to the public policy pronouncements of the Arizona Supreme Court in *Baker*. In examining the legislative objectives behind the Anti–Deficiency Statutes, the *Baker* court noted that the statutes created the "direct benefit of . . . the elimination of hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process." 160 Ariz. at 101, 770 P.2d at 769 (quoting Boyd & Balentine, *Arizona's Consumer Legislation: Winning the Battle but . . .*, 14 ARIZ. L. REV. 627, 654 (1972)). The court read both A.R.S. sections 33–729(A) and 33–814(G), "as evincing the legislature's desire to protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price." *Baker*, 160 Ariz. at 101, 770 P.2d at 769. In reaching its holding, the court concluded that the legislature's objective in enacting the Anti–Deficiency Statute was to abolish the personal liability of persons who give trust deeds encumbering properties that fit within the statutory definition. *Id.* at 104, 770 P.2d at 772.

Given these strong statements concerning the legislature's consumer protection objec-

---

is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. section 33–722 reads:

 If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed.

tive, we believe the legislature did not intend that a loan would lose its character as a purchase-money obligation when, as here, it is extended, renewed, or the remaining portion of the original loan is refinanced and the deed of trust on the property that was bought with the original loan continues or is renewed. Given the realities of the marketplace, to believe otherwise would put many homeowners, unable to make mortgage payments, at the peril of facing personal liability as well as the loss of their homes—a result the legislature intended to avoid through the Anti–Deficiency Statutes.

Here, the majority of the original loan was used as part of the purchase price for residential property of less than two and one-half acres used for a single-family dwelling. A deed of trust on the property secured the loan. Although a portion of the 1989 consolidated loan was non-purchase-money, the Bank no longer argues that the loan can be bifurcated; thus, we consider the entire loan to be a purchase-money obligation. The workout note was for the balance remaining at that time on the purchase-money note; no additional funds were added to the loan. The note continued to be secured by the deed of trust on the property. Accordingly, we conclude that the workout note retained its character as a purchase-money note.

The Bank cites cases from California and North Carolina to support its argument that the workout note became a non-purchase-money note. Cases from these states may be helpful to us because in reaching its decision, the *Baker* court cited cases from California and North Carolina,[4] noting that their Anti–Deficiency Statutes are similar to Arizona's. 160 Ariz. at 103–04, 770 P.2d at 771–72. Contrary to the Bank's contentions, however, we believe that the case law from those states supports our holding here.

The Bank cites *Bigley v. Lombardo*, 90 N.C.App. 79, 367 S.E.2d 389 (1988), in which the court held that the Anti–Deficiency Statute did not apply to a promissory note which had replaced a purchase-money security deed and was secured by an automobile. Howev-

er, the facts of *Bigley* are distinguishable from the facts before us. There, the original loan was for the purchase of a business, including the real property on which the business was located. *Id.* at 80, 367 S.E.2d at 390. Under North Carolina law, the buyers executed a purchase-money promissory note secured by a deed of trust on the property. *Id.* The sellers subsequently agreed to cancel the purchase-money promissory note and deed of trust so that one of the buyers could borrow money on the business and real property and buy out the other owners. *Id.* That buyer executed a new promissory note to the sellers that was secured by his automobile. *Id.* The first note was marked "paid in full and satisfied," and the record of the deed of trust was canceled. *Id.*

The *Bigley* court held that because the new security agreement did not secure any portion of the original purchase of real property and the purchase-money deed of trust was canceled, the second note was not a purchase-money note, and therefore the statutory anti-deficiency protection did not apply. 90 N.C.App. at 84, 367 S.E.2d at 392. The court, however, noted that "so long as the debt of the purchaser of property *is secured by a deed of trust on the property or part of it* given by the purchaser to secure payment of the purchase price the deed of trust is a purchase-money deed of trust." *Id.* (emphasis added in *Bigley* ) (quoting *Burnette Indus., Inc. v. Danbar of Winston–Salem, Inc.*, 80 N.C.App. 318, 321, 341 S.E.2d 754, 756 (1986)).

The Bank also cites *Union Bank v. Wendland*, 54 Cal.App.3d 393, 126 Cal.Rptr. 549 (1976). There, Wendland had purchased a residence in 1966 for the sum of $26,500 and borrowed the money from a savings and loan. *Id.* at 396, 126 Cal.Rptr. at 552. In 1967, he borrowed $28,000 from Union Bank's predecessor to pay off the original loan. *Id.* The bank loan was secured by a first position deed of trust. *Id.* The *Wendland* court held that under this scenario, the bank loan was not a purchase-money loan and the purchase-money protections afforded by section 580b

---

**4.** The Arizona Supreme Court acknowledged in *Baker v. Gardner* that Arizona's Anti–Deficiency Statutes are similar to California's Anti–Deficien-

cy Statutes set forth in section 580 of the California Code of Civil Procedure. 160 Ariz. at 102, 770 P.2d at 770.

of the California Code of Civil Procedure did not apply. *Id.* at 400, 126 Cal.Rptr. at 554.

Although on its face *Wendland* appears to support the Bank's argument, a close reading shows that it is distinguishable. Section 580b prohibited deficiency judgments after a sale of real property under a deed of trust given to the property *seller* to secure payment of the purchase price of the property. 54 Cal.App.3d at 398, 126 Cal.Rptr. at 553, n. 2. The *Wendland* court found that section 580b was inapplicable because the first deed of trust was not given as security for the purchase money within the meaning of section 580b. *Id.* at 398, 126 Cal.Rptr. at 553. That was so because a loan transaction with a bank was a transaction that did not come within the purpose of section 580b, which was to protect purchasers under purchase-money mortgage transactions in which the seller of real property retained an interest in the land sold to secure payment of part of the purchase price. *Id.* The court then analyzed the case under section 580d, the more general Anti-Deficiency Statute, and, based on a merger theory, reversed the judgment for the bank. *Id.* at 405, 126 Cal.Rptr. at 558.

Two California cases more recent than *Wendland* refute the Bank's argument. The issue in *Palm v. Schilling*, 199 Cal.App.3d 63, 244 Cal.Rptr. 600 (1988), was whether the prohibition against deficiency judgments could be *contractually* waived as a *condition* of renegotiation of the obligation. In holding that it could not be waived in the circumstances presented, the *Palm* court stated:

> As the Supreme Court observed decades ago, "[w]ith purchase money trust deeds, [ ][sic] the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless." ... Renegotiation of a purchase money note, whether viewed as a renewal or a new transaction, will not support a waiver because section 580b prohibits a waiver in advance of or at the time of the creation of a purchase money mortgage.

The explicit language of section 580b brooks no interpretation other than that deficiency judgments are prohibited by a purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect on the original real property. (Citation omitted.)

*Id.* at 75–76, 244 Cal.Rptr. at 609. Similarly, the court in *Ziegler v. Barnes*, 200 Cal. App.3d 224, 246 Cal.Rptr. 69 (1988), concluded that a new $95,000 promissory note that replaced a $185,000 purchase-money note was merely a substitute for the original note, even though it was for a lower amount that reflected payments made, and thus that the character of the money due had not changed. *Id.* at 230–31, 246 Cal.Rptr. at 72–73. The fact that the note added payees also did not change its character. *Id.* at 230, 246 Cal. Rptr. at 72. Therefore, the court held that the creditor was not entitled to a deficiency judgment. *Id.*

In summary, we hold that regardless of whether the workout note was an extension, renewal, or refinancing of the 1989 consolidated loan, it retained its character as a purchase-money note. *See Lucky Invs., Inc. v. Adams*, 183 Cal.App.2d 462, 7 Cal. Rptr. 57 (1960) (Cancellation and replacement with new notes, secured by the same property, transfers purchase-money status to new notes.). Accordingly, the Bank is prohibited from waiving the security under the deed of trust and suing on the note. We affirm the trial court's dismissal of the Bank's complaint.

## B. Dismissal of the Counterclaim

The Beauvais' counterclaim can be maintained only if there is a finding that the security for the 1989 consolidated loan did not continue for the workout note. Our disposition of the primary question in this appeal leaves no basis for the counterclaim. Therefore, we affirm the trial court's dismissal of the counterclaim.

## C. Attorneys' Fees

■ The Beauvais request an award of their attorneys' fees incurred on appeal. However, they cite no basis for their request. Therefore, we deny the request. *See* Ariz.

R. Civ.App. P. 21(c); *City of Phoenix v. Maricopa County Superior Court*, 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985) (denying request for attorneys' fees where no authority for such award cited).

THOMPSON, P.J., and KLEINSCHMIDT, J., concur.