43 P.3d 208

Catherine PIJANOWSKI, Diane Brooks, Antonio Cuevas, Rick Hanson, Marty McIntosh, Dan Raymond, Anthony Smith, Phil Spongross, Lewis Wilbur, Larry Williams and Del Cortney Miler, Plaintiffs–Appellants,

v.

YUMA COUNTY, a body politic; Bobby McClendon, in his official capacity as a member of the Board of Supervisors; Lucy Shipp, in her official capacity as a member of the Board of Supervisors; "Casey" Prochaska, in her official capacity as a member of the Board of Supervisors; Tony Reyes, in his official capacity as a member of the Board of Supervisors; Greg Ferguson, in his official capacity as a member of the Board of Supervisors; and Ralph E. Ogden, Sheriff of Yuma County, Real Party in Interest, Defendants–Appellees.

No. 1 CA–CV 00–0482.

Court of Appeals of Arizona, Division 1, Department A.

April 2, 2002.

Yen, Pilch & Komadina, P.C. By Robert E. Yen, Phil S. Flemming, Phoenix, Attorneys for Plaintiffs–Appellants.

Patricia A. Orozco, Yuma County Attorney By Richard D. Engler, Deputy County Attorney, Yuma, Attorneys for Defendant–Appellee Yuma County.

## OPINION

SULT, Judge.

### BACKGROUND

¶ 1 Appellants are present and former deputy sheriffs employed by Yuma County. They sued appellees Yuma County, its board of supervisors, and its sheriff, contending that the County violated Arizona Revised Statutes ("A.R.S.") § 23–392 (Supp.2001) by paying overtime to its deputies only when they worked more than 171 hours in a 28–day cycle. Section 23–392 requires payment of overtime to law enforcement agents after completion of 40 hours of work in a one-week cycle.

¶ 2 Appellees asserted that the County's overtime policy was permitted by A.R.S. § 11–251(38) (2001). This statute authorizes a county to pay pecuniary compensation for overtime work performed by its employees and appellees contended that it excepts county law enforcement agents from coverage under § 23–392.

¶ 3 The trial court adopted a middle ground and held that the two statutes provided alternative methods of paying overtime and the County could choose which statute to apply. We disagree both with appellees and the trial court and find that § 23–392 controls. We therefore reverse the trial court's decision and remand with instructions to calculate appellants' entitlement to overtime compensation using the 40–hour workweek prescribed by § 23–392.

## ANALYSIS

¶ 4 Section 23–392, originally enacted in 1975, provides in pertinent part:

A. Any person engaged in law enforcement activities shall be compensated for each hour worked in excess of forty hours in one work week at the option of such employer at the following rates:

1. One and one-half times the regular rate at which such person is employed or one and one-half hours of compensatory time off for each hour worked if by the person's job classification overtime compensation is mandated by federal law.

¶ 5 Section 11–251 is a broad grant of authority from the legislature to Arizona counties. It currently contains 60 subsections, each conferring a discrete power to perform a described function. These powers are qualified, however, by the preface to the enumeration of powers which conditions exercise of any power only upon there being no other "limitations and restrictions ... prescribed by law." Subsection (38), added in 1977, authorizes the board to:

Provide pecuniary compensation as salary or wages for overtime work performed by county employees, including those employees covered by the provisions of title 23, chapter 2, article 9. In so providing, the board may establish salary and wage plans incorporating classifications and conditions prescribed by the federal fair labor standards act.

(Footnotes omitted).

¶ 6 The County currently calculates overtime entitlement as time and one-half for each overtime hour worked in excess of 171 hours in a 28–day work period. This method of calculating overtime compensation, although not literally permitted by § 11–251(38), is argued by the County to be authorized because it comports with the Fair Labor Standards Act's provision governing overtime calculation for law enforcement personnel. See 29 U.S.C.A. § 207(k) (1998). That is, § 11–251(38) permits wage plans to be established using "classifications and conditions" prescribed by the federal act, and § 207(k) of that act permits a 171 hour/28–day cycle for law enforcement personnel.

Therefore, the County argues, it may calculate overtime using the federal act's formula, which the County prefers because it permits the Sheriff to work his deputies more hours before incurring an overtime obligation than if he had to comply with the 40–hour workweek of § 23–392.

¶ 7 The economic benefit to the County is illustrated by this example. Assume in a 28–day (4–week) period, the Sheriff worked a deputy 43 hours each week. Under the County's plan, the resulting total of 172 on-duty hours would generate only 1–hour of overtime. Under § 23–392, however, because overtime must be calculated on a weekly basis, there would be 3 hours of overtime generated each week, for a total of 12 hours at the end of the 4–week period.

¶ 8 Appellants point out that the federal act by its terms does not preempt state provisions that are more favorable to employees so there is no federal requirement that the County use the federal formula. See 29 U.S.C.A. § 218(a) (1998). Consequently, appellants contend, the County must comply with § 23–392 in calculating overtime entitlement because the statute applies to all law enforcement agents in the state, and the statute indicates that these agents "shall" be compensated in accordance with its terms.

¶ 9 On a cursory read, which statute controls seems easily resolved. Section 23–392, enacted in 1975, deals with a narrow category of government employees, namely law enforcement agents, and specifies a 40–hour workweek for all such agents. Section 11–251(38), enacted in 1977, deals with county governmental entities and all their employees, from heads of agencies to entry-level laborers, and does not specify any particular workweek but merely permits borrowing from the federal act. Surely, in enacting the latter statute applicable to dozens of categories of county employees, the legislature did not intend to eliminate the benefit previously bestowed upon the law enforcement segment of county employees under the earlier, more specific statute. Rather, the legislature would have considered § 23–392 to be one of those laws restricting or limiting grants of power to counties as set forth in the qualify-

ing preface to § 11–251, and § 23–392 would continue to apply to deputy sheriffs.

¶ 10 The interpretative waters become murkier, however, upon a closer examination of § 11–251(38). Its language specifically includes employees encompassed by "title 23, chapter 2, article 9" of the Arizona Revised Statutes, and there are only two statutes in article 9, one of which is § 23–392. Because subsection (38) was enacted two years after § 23–392, it can be argued that this sequence evinces a legislative intent to modify § 23–392 by removing county law enforcement agents from its coverage. Thus, under subsection (38), counties would be permitted to calculate overtime for law enforcement personnel by using the federal act's provision authorizing the 171 hour/28–day formula rather than being restricted to the 40–hour workweek requirement of § 23–392.

¶ 11 In the event of a clear conflict between statutes enacted at different times, the later statute is usually presumed to accurately reflect the intent of the legislature and will therefore be found to have modified the earlier statute. *See Webb v. Dixon,* 104 Ariz. 473, 475–76, 455 P.2d 447, 449–50 (1969). We agree that if there were a clear conflict between statutes in this case, the argument that the later trumps the earlier would be persuasive. However, in our view there is not such a conflict.

¶ 12 We first observe that § 11–251(38) does not directly describe any method of calculating overtime compensation. Rather, it merely references "classifications and conditions" from the federal act as source material on which a county may base its overtime plan. While this incorporation-by-reference can be read as authorizing the County to adopt an overtime calculation formula for county employees in general, it is not an unqualified directive to the County to use a 171 hour/28–day formula for its law enforcement agents.

¶ 13 Section 23–392, on the other hand, plainly mandates calculating overtime compensation for law enforcement agents using a 40–hour workweek as the basis. If the legislature intended § 11–251(38) to carve out a subset of county deputy sheriffs and remove them from the greater law enforcement com-

munity covered by § 23–392, one would think that the legislature would have included a mention of this fact in § 23–392. However, § 23–392 was not amended in this regard after passage of § 11–251(38), and in our opinion, this inaction precludes finding a clear intention on the part of the legislature that § 11–251(38) should modify § 23–392.

¶ 14 The alternative argument is that the legislature intended a modification by implication. However, modification-by-implication is disfavored by courts when construing statutes, and we will not find such an intent unless the interplay between the statutes under consideration compels us to find the legislature must have intended the later statute to impliedly repeal the earlier one. *Curtis v. Morris,* 184 Ariz. 393, 397, 909 P.2d 460, 464 (App.1995). In considering this argument, we acknowledge that appellees' position is stronger than that of the usual litigant urging implied repeal because in most cases, including *Curtis,* the later enacted statute makes no mention of the earlier. Here, there is a reference in § 11–251(38) to § 23–392, although it is neither a direct reference nor one that unequivocally accomplishes the amendment appellees seek to establish. Nevertheless, the reference is some evidence of an implied repeal and the issue therefore warrants further exploration.

¶ 15 In construing statutes, we often consider the consequences that would attach if a suggested interpretation is adopted. *Arnold Construction Co., Inc. v. Arizona Board of Regents,* 109 Ariz. 495, 498, 512 P.2d 1229, 1232 (1973). In this case, a consideration of consequences is particularly warranted because finding a repeal by implication results in county law enforcement agents being entitled to a less favorable overtime compensation program than all other law enforcement agents in Arizona. Before we find a legislative intent to create such disparate treatment, we should be certain that the underlying purposes of the statutes in question are consistent with such an interpretation. *Lemons v. Superior Court of Gila County,* 141 Ariz. 502, 505–06, 687 P.2d 1257, 1260–61 (1984).

¶ 16 We know that the primary purpose for the passage of § 23–392 was simply to provide legal authority for governmental bodies to provide pecuniary overtime compensation to their law enforcement personnel, an authority that had not previously existed. This was our holding in *Gilbert v. County of Mohave,* 133 Ariz. 209, 650 P.2d 511 (App.1982). However, this is not the only purpose behind the statute. We note that the legislature has never amended § 23–392, nor any other relevant statute, specifically to permit government employers to take advantage of the 171 hour/28–day formula for their law enforcement agents. This is notwithstanding that, as appellees inform us, the Fair Labor Standards Act, which had initially restricted overtime calculation for all occupations to a 40–hour workweek, was changed to permit use of the 171 hour/28–day formula for calculating overtime for law enforcement and fire department personnel.

¶ 17 That § 23–392 has not been amended in this regard suggests that there is another purpose behind the statute. We perceive that purpose to be one discouraging government employers from routinely working their law enforcement officers for extended periods beyond a normal 40–hour workweek. By imposing what amounts to a fiscal penalty, these employers are encouraged to fulfill their mission by employing additional officers rather than by stretching existing personnel resources beyond desirable physical or mental limits. *Cf. Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944) (the Fair Labor Standards Act's purpose in requiring overtime pay of time-and-one-half is to pressure employers to hire more straight-time employees instead of paying overtime).

¶ 18 We do not doubt that the legislature is cognizant of the significant physical and mental demands that are made upon law enforcement professionals in the performance of their duties. In responding to this reality, the legislature could logically conclude that the public interest is better served when crises to which such professionals respond are handled by officers with alert minds and fresh bodies, particularly in today's society when armed confrontations between officer and citizen are increasingly common. A legislative intent to discourage extended working hours for law enforcement agents is not served by permitting government employers to use the 171 hour/28–day formula to calculate their overtime compensation.

¶ 19 Our legislature's aversion to the federal act's formula was further illustrated in 1995 when it amended § 23–392 to permit the Arizona Department of Public Safety to establish an alternate working period for its air rescue section in accordance with the federal act. 1995 Ariz. Sess. Laws, ch. 55, § 1 (adding subsections (C) and (D)). While the amendment permitted use of the 28–day cycle, the legislature specifically limited to 160 the number of hours that could be worked in that cycle before the affected employees began accruing overtime. *Id.* This amendment, permitting only one narrow exception to the standard 40 hour workweek and then restricting that exception even further, is more cogent evidence that the legislature intends to adhere to its commitment to officer readiness by discouraging extended working hours.

¶ 20 Appellees argue that the legislature nevertheless intended § 11–251(38) as permission for counties to treat deputy sheriffs differently from the treatment all other law enforcement officers in the state receive under § 23–392. Moreover, because § 11–251(38) is the later statute, its purpose trumps whatever purposes underlie § 23–392. This position necessarily prompts the question why the legislature, just two years after enacting § 23–392, would have changed its mind so dramatically about a particular segment of the law enforcement population. Put another way, what is there relating to deputy sheriffs that would cause the legislature to impliedly amend § 23–392 to require those deputies to work more hours than their state- or city-employed colleagues before qualifying for overtime?

¶ 21 We see no persuasive reason why the legislature would view deputy sheriffs differently from the rest of the law enforcement community, and appellees have not suggested any. What appellees do offer are technical arguments based on the interplay between the Fair Labor Standards Act and the state

statutes. They also assert that compensating under § 23–392 will financially burden the counties. Finally, they argue that because of the financial imposition, overtime for deputies will be compensated by time off rather than payment of money, and as a consequence deputies will more rapidly accumulate time off, leaving the Sheriff short-handed and thereby impairing law enforcement.

¶ 22 Because we give statutes a pragmatic construction rather than a technical one if that is necessary to effect the legislature's intention, the technical arguments appellees offer are unpersuasive. *See State v. Weible,* 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984). That there may be an economic burden by complying with a mandate from the legislature contributes nothing to understanding the extent of that mandate. As for the allegation that law enforcement may be impaired by the application of § 23–392, this is a judgment at odds with the legislature's conclusion evinced in the statute that such impairment would occur if § 23–392 were not applied.

¶ 23 What is missing from appellees' argument is any logical reason why the legislature would implicitly repeal § 23–392 so as to permit counties to implement a different overtime compensation scheme for their deputy sheriffs than that enjoyed by the rest of the law enforcement community. In the absence of any such reason, we must conclude that no implied repeal has occurred and that for counties and their deputy sheriffs, the prefatory language of § 11–251 subjects a county's overtime calculation authority to the formula prescribed in § 23–392.

¶ 24 Appellants offer an interpretation of § 11–251(38) and its relationship to the Fair Labor Standards Act that demonstrates why appellees' position cannot be sustained even if the provisions of the federal act *prima facie* apply to county law enforcement agents. Appellants first cite § 218(a), the non-preemption provision of the federal act, which provides in pertinent part:

[N]o provision of this chapter ... shall excuse noncompliance with any ... State law ... establishing ... a maximum workweek lower than the maximum workweek established under this chapter.

Appellants then assert that even though the reference to "classifications and conditions" in § 11–251(38) permits a county to employ the federal act in setting wage and salary plans for its employees, it is precluded by § 218(a) from applying the act in a way that would result in less favorable treatment of employees than required under state law. Thus, a county cannot use the 171 hour/28–day formula of § 207(k) because § 218(a) requires a county to comply with the more favorable workweek calculation mandated by § 23–392.

¶ 25 Appellants' interpretation is sensible and persuasive. It also illustrates why the legislature did not impliedly amend § 23–392 when it enacted § 11–251(38). The later statute simply permitted Arizona counties to apply Fair Labor Standards Act provisions to their law enforcement agents to the extent that such provisions did not conflict with state law more favorable to those agents. Where, as here, the particular subject matter was governed by more favorable state law, that law continues to control. The legislature obviously was aware of all the provisions of the federal act, including § 218(a), when it enacted § 11–251(38) and therefore saw no need to amend § 23–392 because it was unaffected by passage of § 11–251(38).

## CONCLUSION

¶ 26 The trial court erred when it concluded that Yuma County could calculate overtime compensation for its law enforcement personnel using a method other than that prescribed by § 23–392. We therefore reverse the trial court's judgment and remand this matter with instructions to calculate appellants' claims under the proper standard. Appellants' application for attorneys' fees on appeal is denied for failure to state the basis for the request as required by Rule 21(c), Arizona Rules of Civil Appellate Procedure. *Bank One, Arizona v. Beauvais,* 188 Ariz. 245, 251–52, 934 P.2d 809, 815–16 (App.1997).

CONCURRING: CECIL B. PATTERSON, Jr., and SHELDON H. WEISBERG, Judges.