Filed 7/23/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CAROL COKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JP MORGAN CHASE BANK, N.A., et al.,<br><br>    Defendants and Respondents. | D061720<br><br><br><br>(Super. Ct. No. 37-2011-00087958-<br> CU-MC-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Luis R.

Vargas, Judge.  Reversed and remanded with directions.



Stilwell & Associates and Andrew R. Stilwell for Plaintiff and Appellant.

AlvaradoSmith, John M. Sorich, S. Christopher Yoo and Jenny L. Merris for

Defendants and Respondents.

Housing and Economic Rights Advocates, Elizabeth S. Letcher; National Housing

Law Project and Kent Qian as Amici Curiae on behalf of Plaintiff and Appellant.

In this appeal we are asked to determine a question of first impression. Do the anti-deficiency protections in Code of Civil Procedure[1] section 580b apply to a borrower after she, with the approval of her lender, sells her residence to a third party for a price that is less than the outstanding balance owed the lender on the borrower's mortgage loan, which was obtained to purchase the residence? We conclude that section 580b's protections do apply in this situation.

Here, we are faced with an all too familiar and unfortunate fact pattern in the wake of the collapse of the residential real estate market in 2008. A borrower obtained a mortgage loan to buy a house. The loan was secured by a deed of trust recorded against the residence. After property values fell and the economy declined, the borrower was no longer able to make payments on her loan, and the mortgage lender began the nonjudicial foreclosure process. To avoid foreclosure, the borrower agreed to sell her house to a third party. However, the sale price was less than the amount the borrower owed on her loan. The mortgage lender agreed to the sale, but, as a condition of approval, stated that the borrower would be responsible for any deficiency, i.e., the difference between the outstanding balance on the loan and the money received by the lender after the sale to the third party.

After the sale, the mortgage lender pursued the borrower for the deficiency. In response, the borrower filed a complaint for declaratory relief seeking a judicial declaration, among other things, that section 580b prohibits the lender from obtaining a

_____

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

deficiency judgment after the sale. The mortgage lender demurred to the complaint, and the superior court sustained the demurrer without leave to amend finding section 580b applies only after a foreclosure. The court subsequently entered judgment dismissing the borrower's complaint with prejudice.

The borrower appeals, arguing that the court incorrectly interpreted section 580b in finding that it does not prevent a lender from seeking a deficiency judgment after a sale of the property to a third party. We agree and thus reverse the judgment and remand this matter to the superior court with directions.

## FACTUAL[2] AND PROCEDURAL BACKGROUND

Carol Coker was the owner of certain real property located at 2732 Second Avenue, #D-3, San Diego, California. To purchase the property, she obtained a $452,000 loan memorialized by a promissory note. The note was secured by a deed of trust recorded against the property.

The original lender was Valley Vista Mortgage Corporation, a company that went defunct. Chase Home Finance was the successor in interest to Valley Vista, and the alter ego, subsidiary, successor in interest, or a division of JP Morgan Chase Bank, N.A. (Chase Bank).

Coker stopped paying on the loan and a notice of default and election to sell under the deed of trust was recorded. Coker subsequently negotiated a sale of the property to a

---

[2]  Because we are reviewing a judgment of dismissal following an order sustaining a demurrer, we assume the facts alleged in the first amended complaint are true if they are not contrary to law or to a fact of which we may take judicial notice. (See *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 238.)

third party, but the sale price was less than the outstanding balance under the loan. Thus, Coker asked Chase Bank to agree to the sale.

Chase Bank approved the sale subject to several conditions, one of which stated that the amount of the sale proceeds paid to Chase Bank was for the release of Chase Bank's security interest only, and Coker was still responsible for any deficiency balance remaining on the loan after application of the proceeds received by Chase Bank.

The sale closed and Chase Bank received the agreed upon proceeds from the sale. A grant deed was recorded evidencing the transfer of the property from Coker to the buyer. In addition, Chase Bank executed and recorded a substitution of trustee and full reconveyance of Coker's deed of trust.

After the sale closed, Allied International Credit, Inc., on behalf of Chase Bank, sent Coker a collection letter demanding Coker pay $116,686.89 based on the unsatisfied portion of the loan. In response, Coker filed a complaint for declaratory relief, which she later amended. The first amended complaint listed three causes of action for declaratory relief. These causes of action alleged sections 580b and 580e as well as the common law prohibited Chase Bank from collecting a deficiency based on the loan.

Chase Bank demurred to the first amended complaint. The superior court sustained the demurrer without leave to amend, finding: (1) section 580b only applied after a property was sold by judicial or nonjudicial foreclosure; (2) section 580e was not applicable because it did not apply retroactively; and (3) there was no common law anti-deficiency protections. The court subsequently entered judgment, dismissing the first amended complaint with prejudice as to Chase Bank.

4

Coker timely appealed.

DISCUSSION

I

*STANDARD OF REVIEW*

" 'On appeal from [a judgment] of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.)  "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

II

*COKER'S ASSERTIONS*

Coker asserts the superior court erred in sustaining the demurrer without leave to amend because:  (1) a demurrer is inappropriate for declaratory relief actions; (2) section 580b does not require a foreclosure; (3) section 580e does not have to be applied retroactively; and (4) she did or could have adequately pled a claim for estoppel.

Here, we focus on Coker's section 580b argument.  Coker maintains section 580b does not require a foreclosure and its anti-deficiency protection applies to a sale like the

5

one at issue here.  Chase Bank disagrees, contending section 580b only applies after a foreclosure.  In making its argument, Chase Bank relies on the text of both sections 580b and 580d.  As we explain below, we conclude that section 580b applies to any loan used to purchase residential real property (purchase money loan) regardless of the mode of sale.  As such, section 580b's anti-deficiency protections prohibit a deficiency judgment following any sale of the subject real property.  Because we conclude the superior court incorrectly interpreted section 580b and sustained the demurrer in error, we do not reach any of the other issues Coker raises.

III

*FORECLOSURES, SHORT SALES, AND DEFICIENCY JUDGMENTS*

California recognizes two types of foreclosure.  The first and more common is a nonjudicial foreclosure.  "In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust."  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.)  "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption."  (*Ibid.*)  The recording of a notice of default begins the nonjudicial foreclosure process, which concludes with the trustee's sale.  (See Civ. Code, §§ 2924, subd. (a)(1); 2924g.)  The creditor, however, may not seek a deficiency judgment following the trustee's sale.  (See § 580b; *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43-44 (*Roseleaf*).)  This prohibition exists even if the loan was not a purchase money loan.  (See § 580d.)

6

A judicial foreclosure requires the foreclosing party to file a lawsuit. In that action, the plaintiff must establish the subject loan is in default and the amount of default. (*Arabia v. BAC Home Loans Servicing, L.P*. (2012) 208 Cal.App.4th 462, 470.) While a judicial foreclosure typically is more costly and time consuming than a nonjudicial foreclosure and the borrower retains the right of redemption, the plaintiff may seek a deficiency judgment in certain circumstances. (*Id*. at p. 471.) "The amount of the deficiency judgment will be the difference between the fair market value of the property at the time of the foreclosure sale (as determined by the court) and the amount of indebtedness." (*Ibid*.) Nevertheless, the plaintiff may not recover a deficiency judgment after judicially foreclosing on a purchase money loan. (See §§ 580b, subd. (a)(3); 726, subd. (b).)

Thus, section 580b prohibits a deficiency judgment following a foreclosure on a purchase money loan. (See *Budget Realty, Inc. v. Hunter* (1984) 157 Cal.App.3d 511, 513 (*Budget Realty*).) Section 580d further extends this anti-deficiency protection to include any loan secured by a deed of trust recorded against residential real property after a nonjudicial foreclosure. (*National Enterprises, Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1226.) However, here, it is undisputed that there was no foreclosure, either judicial or nonjudicial. Instead, Coker sold the property to a third party, with Chase Bank's consent, for less than what Coker owed on the loan. This is what is commonly known as a "short sale" because the sale price is less than the balance of the outstanding debt secured by the deed of trust. (See 1 Bernhardt, Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont. Ed. Bar 4th ed. 2011) Debtor Strategies, § 7.21A, p. 532.)

7

In California, short sales are becoming increasingly more common, increasing from a few thousand in 2008 to approximately 90,000 in 2009. (See Com. on Judiciary, Analysis on Sen. Bill 931 (2009-2010 Reg. Sess.) as amended March 25, 2010, p. 1.) Because short sales have only recently become prevalent in California, it is not surprising that there is no reported California case determining if section 580b's anti-deficiency protections extend to a short sale involving real property secured by a deed of trust based on a purchase money loan. We therefore must answer this novel question.

IV

*SECTION 580B*

A. Statutory Interpretation

In construing statutes, we determine and effectuate legislative intent. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007; *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 40.) To ascertain intent, we look first to the words of the statutes. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387; *Woodhead*, *supra*, at p. 1007.) "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844.)

B. The Interpretation of Section 580b

Section 580b is part of a collection of anti-deficiency statutes created by the Legislature during the Great Depression. Section 580b states in relevant part: "No deficiency judgment shall lie in any event . . . [¶] [a]fter a sale of real property . . . for failure of the purchaser to complete his or her contract of sale. . . . [¶] . . . [¶] [u]nder a

8

deed of trust or mortgage on a dwelling . . . given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling."  It was amended in 1963 to add, among other things, a clause extending section 580b to the kind of real property at issue in this case, namely "a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser."  (See *Barash v. Wood* (1969) 3 Cal.App.3d 248, 251; Stats. 1963, ch. 2158, § 1, p. 4500.)

Section 580b addresses purchase money loans and establishes that they are non-recourse loans under California law.  "In a nonrecourse loan . . . , the borrower has no personal liability and the lender's sole recourse is against the security for the obligation." (*Aozora Bank, Ltd. v. 1333 North California Boulevard* (2004) 119 Cal.App.4th 1291, 1295.)  "Section 580b prohibits a deficiency judgment after any sale of real property under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price.  Thus in the event of a default in payment under a purchase money debt owed to the vendor and secured by the property purchased, the vendor can only look to the security for the recovery of the debt." (*Budget Realty*, *supra*, 157 Cal.App.3d at p. 513, fn. omitted.)

In interpreting section 580b, we recognize that it, like other components of the anti-deficiency statutes, "has been liberally construed to effectuate the specific legislative purpose behind it.  . . .  '[T]he courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and

liberal construction that often goes beyond the narrow bounds of the statutory language.' " (*Prunty v. Bank of America* (1974) 37 Cal.App.3d 430, 436.) Indeed, our high court has consistently rejected any interpretations that undermine the purpose of the statute. (See e.g., *DeBerard Properties v. Lim* (1999) 20 Cal.4th 659, 663 (*DeBerard*) [rejecting interpretation that would allow creditor to "circumvent" section 580b and thus "flout" its "purpose"].)

The Legislature passed section 580b for "two reasons": (1) to "stabilize[] purchase money secured land sales [prices] by [preventing] overvaluing the property"; and (2) ensure "purchasers as a class are harmed less than they might otherwise be during a time of economic decline" because "if property values drop . . . , the purchaser's loss is limited to the land that he or she used as security in the transaction." (*DeBerard*, *supra*, 20 Cal.4th at p. 663.)

These two public policy goals are achieved by shifting the risk of falling property values to the lender. As our Supreme Court explained: "Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (*Roseleaf*, *supra*, 59 Cal.2d at p. 42.)

With the text and purpose of section 580b in mind, we see nothing in section 580b that leads us to believe it only applies after a foreclosure sale as Chase Bank urges. Section 580b's plain language does not limit the mode of sale: "No deficiency judgment shall lie in any event . . . after a sale of real property." (§ 580b.) There is no language modifying the term "sale." Moreover, the use of the phrase "in any event" further indicates that the Legislature intended section 580b to apply to all sales. Put differently, section 580b does not address a specific mode of sale. Instead, it focuses on a particular type of loan: the purchase money loan. (See *Prunty v. Bank of America*, *supra*, 37 Cal.App.3d at p. 435; *Budget Realty, supra*, 157 Cal.App.3d at p. 513; § 580b.) The plain language of section 580b therefore supports an interpretation that its protections apply after any sale, not just a foreclosure.

While no California court has specifically addressed whether section 580b applies to a short sale involving a purchase money loan, courts have consistently held that a foreclosure is not a prerequisite to trigger section 580b's protections. (See *Frangipani v. Boeker* (1998) 64 Cal.App.4th 860, 862-865 [holding that § 580b barred beneficiary of "junior purchase money trust deed" from collecting deficiency where property was "not foreclosed" because beneficiary "cancel[ed] the notice of foreclosure"]; *Venable v. Harmon* (1965) 233 Cal.App.2d 297, 302 [holding that § 580b applied to prevent a deficiency judgment after the defendants tendered the property to the plaintiffs and "the fact that there has not been a prior sale is of no moment"].)

Our interpretation that section 580b applies to all sales of property encumbered by a deed of trust securing a purchase money loan is further buttressed by California's

11

newest anti-deficiency statute: section 580e.[3] Section 580e bars deficiencies where there is a "deed of trust or mortgage for a dwelling of not more than four units" if "the trustor or mortgagor sells the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of sale, in accordance with the written consent of the holder of the deed of trust or mortgage . . . ." (§ 580e, subds. (a)(1).)[4] Section 580e expands the anti-deficiency protection found in section 580b by prohibiting a deficiency judgment arising out of a short sale approved by the creditor of any mortgage loan, not just purchase money loans. Unlike section 580b, however, section 580e only applies to a specific mode of sale: the short sale. (See § 580e.)

Moreover, the legislative history of section 580e (introduced as Senate Bill No. 931) shows the Legislature knew section 580b applied to short sales. For example, the section of the Senate Floor Analyses devoted to "[e]xisting law" states that section 580b "provide[s] protection to a purchase money note that becomes the subject of a . . . short sale." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business of Sen. Bill No. 931 (2009-2010 Reg. Sess.) as amended June 1, 2010, p. 2.)

In addition, the legislative history of section 580e reveals that it was enacted to extend anti-deficiency protections beyond the purchase money loans covered by section 580b to include nonpurchase money loans. As the Assembly Floor Analysis expressly

---

[3] The Legislature passed section 580e in 2010 and amended it in 2011. (See Stats. 2010, ch. 701 (Sen. Bill No. 931) § 1, p. 4069; Stats. 2011, ch. 82 (Sen. Bill No. 458) § 1, pp. 1954-1955.)

[4] Section 580e also has several other provisions not relevant here.

12

states:  "According to the author . . . [t]he purpose of this proposed legislation is primarily to protect distressed homeowners who have non-purchase money recourse loans on residential property. . . ."  (Assem. Floor Analysis, 3d reading of Sen. Bill No. 931 (2009-2010 Reg. Sess.) as amended June 1, 2010 (Assem. Floor Analysis), p. 2.)  The Legislature further made clear that Senate Bill No. 931 "seeks to clear up any legal confusion between purchase money and non-purchase money loans in regards to short sales . . . ."  (Assem. Floor Analysis, *supra*, p. 3.)

We are not persuaded by Chase Bank's argument that section 580d[5] somehow supports its contention that section 580b only applies after a foreclosure.  The phrase "in any event after a sale" in section 580b stands in stark contrast to section 580d, which applies only where the real property "has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."  (See § 580d; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 237 [section 580d "precludes a judgment for any loan balance left unpaid after the lender's nonjudicial foreclosure under a power of sale in a deed of trust . . . on real property."].)  Put differently, section 580d clearly states that it applies only after a trustee's sale, but section 580b contains no similar limiting language.

---

5    Section 580d provides in relevant part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."

13

In summary, we conclude the plain language of section 580b, its purpose (as consistently determined by California courts), and the language of other anti-deficiency statutes makes clear that section 580b applies to the short sale here.

### C. The Security First Rule

In reply to Housing and Economic Rights Advocates and National Housing Law Project's amicus curiae brief,[6] Chase Bank argues that section 580b does not apply when a borrower acquiesces in a lender's relinquishment of its security interest.[7] In other words, if a borrower waives the "security first rule" of section 726, section 580b is not applicable.

Section 726 and the statutory scheme of which it is part require a secured creditor to proceed against the security before enforcing the underlying debt. (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 733-734.) This security first rule "is hornbook

---

[6] Housing and Economic Rights Advocates and National Housing Law Project requested this court to take judicial notice of Chase Bank's petition for a writ of mandate in *JP Morgan Chase Bank, N.A. v. Superior Court* (Mar. 20, 2013, A137471). They request judicial notice of this petition because Chase Bank admits the interpretation of section 580b is of "great importance to California's loan mortgage lenders, investors, and borrowers." We are aware of the importance of this issue without reading Chase Bank's petition for writ of mandate in an unrelated case that was denied by our colleagues in the First District. Housing and Economic Rights Advocates and National Housing Law Project also request we take judicial notice of portions of the legislative history of sections 580b and 580e. We can consider the legislative history of statutes without taking judicial notice of that legislative history. (Cf. *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) We therefore deny the request to take judicial notice.

[7] Chase Bank did not make any such argument in its respondent's brief. Only after the amicus brief attributed this argument to Chase Bank did Chase Bank explain its position in reply.

14

law in California and warrants no extended discussion." (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 999.)

Relying on *Scalese v. Wong* (2000) 84 Cal.App.4th 863 (*Scalese*), Chase Bank asserts Coker was required to invoke the security first rule of section 726 and had to insist that Chase Bank foreclose on her home before the protections of section 580b applied.  In *Scalese*, the appellants purchased a five-unit apartment building (apartment) and assumed a note and a deed of trust securing that note.  The note was for a purchase money loan. (*Id.* at pp. 865-866.)  The appellants made payments on the note, but then wanted to pay the note off early.  The respondent would not accept a pay off and the appellants refused to make monthly payments.  Ultimately, the respondents brought suit for specific performance and judicial foreclosure.   In their answer, the appellants did not raise an affirmative defense under section 726.  (*Id.* at pp. 866-867.)

The trial court found that the intent of the original parties to the note was that there was no right to prepayment and the appellants were bound by that intent.  Next, the court required the respondent to select between its remedies, either to have a judgment for damages under the cause of action for specific performance or a judicial foreclosure. (*Scalese*, *supra*, 84 Cal.App.4th at pp. 866-867.)  The respondent opted for specific performance.  The appellants did not object, nor did they demand that respondent be forced to exhaust the security under section 726.  The court awarded judgment in favor of the respondent for all accumulated monthly installments, plus interest and attorney fees and costs.  (*Scalese*, *supra*, at p. 867.)

15

On appeal, the appellants argued that the respondent's sole remedy was under section 580b and the award for damages was incorrect. The court disagreed, noting that the appellants could have raised section 726 as a defense many times (requiring the respondent to foreclose), but neglected to do so. The court further determined that the respondent waived its right to have the apartment serve as security for the note while the appellants gave up their right to have the security exhausted before becoming personally liable for any shortfall. Under the facts presented, the court concluded section 580b "never [came] into play." (*Scalese*, *supra*, 84 Cal.App.4th at p. 870.) The court emphasized that the results were equitable and its affirmance of the trial court placed the parties where they would have been absent the appellants' breach of contract. (*Id.* at pp. 870-871.)

In arguing *Scalese*, *supra*, 84 Cal.App.4th 863 is applicable here, Chase Bank overlooks several critical distinctions. *Scalese* did not involve a short sale. Instead, the Court of Appeal properly characterized the dispute in *Scalese* as a breach of contract caused by the parties' disagreement regarding whether the note allowed an early pay off. (*Id*. at pp. 870-871.) Because the appellants refused to pay on the note, the respondent brought suit seeking a judicial foreclosure, or in the alternative, specific performance. Although the appellants could have invoked the security first rule, they neglected to do so at any time during the litigation. The Court of Appeal therefore affirmed the trial court's award of damages based on the missed payments under the note.

In contrast, there was no analogous judicial process here. Chase Bank was pursuing a nonjudicial foreclosure when Coker approached the bank about the possibility

16

of a short sale. After the short sale was completed, Coker brought suit to prevent Chase Bank for recovering the deficiency. There was no similar deficiency at issue in *Scalese*, *supra*, 84 Cal.App.4th 863. Indeed, the damages awarded to the respondent could not be characterized as a deficiency.

In addition, the appellants retained ownership of the apartment in *Scalese*, *supra*, 84 Cal.App.4th 863. Thus, if the Court of Appeal determined that section 580b applied, the appellants would have received a windfall. They would have owned the apartment free and clear without any liability on the note. In holding section 580b was not applicable, the court was reaching an equitable result where the appellants owned the apartment but were personally liable for the missed payments on the note, and the respondent had given up its security interest in the apartment. (*Scalese*, *supra*, 84 Cal.App.4th at pp. 870-871.) Here, Coker no longer owns her residence having sold the property to a third party with Chase Bank receiving the proceeds of that sale.

Chase Bank also overemphasizes the importance of section 726 in connection with section 580b beyond the facts in *Scalese*, *supra*, 84 Cal.App.4th 863. Section 580b only applies after a sale of the subject property. (See § 580b.) In *Scalese*, the only possible sale would have occurred if the respondent proceeded with the judicial foreclosure. If the appellants had invoked section 726, they could have forced a sale of the property and the protections of section 580b would have been triggered. As such, the appellants' waiver of section 726 became critical to the court's analysis of whether section 580b protections applied. Under the facts in *Scalese*, section 726 was the only mechanism by which a sale could occur. By not raising the affirmative defense of section 726, the appellants assured

17

there would be no sale.  Without a sale, section 580b's protections did not apply in

*Scalese*.  Here, there is no such impediment to the application of section 580b because a

short sale occurred.[8]

Finally, we are aware that Chase Bank's reliance on *Scalese*, *supra*, 84

Cal.App.4th 863 is simply another variant of its argument that section 580b only applies

after a foreclosure.  We therefore reject Chase Bank's argument for the reasons discussed

in section IVB above.

### D.  Waiver

Chase Bank additionally contends that section 580b does not apply because Chase

Bank required Coker agree to be liable for any deficiency after the short sale as a

condition of approving the sale.  However, because we determine that section 580b

applies to the short sale at issue here, the parties could not agree to waive the anti-

deficiency protection.  (See *Lawler v. Jacobs* (2000) 83 Cal.App.4th 723, 736-737

["Appellants' waiver of antideficiency protection and coterminous promise to remain

personally liable on the note are void as contrary to [section] 580b and public policy."];

*Palm v. Schilling* (1988) 199 Cal.App.3d 63, 76 ["[T]here never can be a 'subsequent'

contractual waiver of section 580b."].)

---

[8]   Similarly, Chase Bank's reliance on *In re Prestige Limited Partnership-Concord*
(2000) 234 F.3d 1108 is misplaced.  In that case, the Ninth Circuit stated that in a
"situation, where the security has been lost due to a violation of [section] 726 and,
consequently, there has not been and can never be a sale of the property, [section]  580b
does not apply." (*Prestige*, *supra*, at p. 1117.)  Here, it is undisputed that a sale occurred
and the loan that existed at the time of the sale was a purchase money loan.

18

E. Conclusion

"The explicit language of section 580b brooks no interpretation other than that deficiency judgments are prohibited by a purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect on the original real property." (*Palm v. Schilling*, *supra*, 199 Cal.App.3d at p. 76.)  There is no dispute that the loan in place at the time of the short sale was a purchase money loan.  Section 580b applies after a sale of the property, and there is no requirement in the statute that a foreclosure must occur to trigger its protections.  Further, those protections cannot be waived.  (See *Lawler v. Jacobs*, *supra*, 83 Cal.App.4th at pp. 736-737.)

Simply, section 580b applies to the short sale that the lender approved here.[9]  As such, the superior court erred when it sustained Chase Bank's demurrer without leave to amend.

---

[9]    Although we have used the term "lender" throughout this opinion to refer to the entity that owns the security interest at issue (here, the promissory note secured by the deed of trust) and has the ultimate authority to consent to the short sale, we are mindful that a variety of terms might be used to describe the appropriate entity (e.g., owner of the promissory note, investor, trustee of a trust comprised of pooled or securitized loans). Our holding here applies equally to any entity that has the authority to approve a short sale of a "dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser."

DISPOSITION

The judgment is reversed.  This matter is remanded to the superior court with instructions to enter an order overruling Chase Bank's demurrer to the first amended complaint.  Coker is to recover her costs of appeal.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.